OPINION OF THE COURT
Titone, J.
Following a jury trial, defendant was convicted of driving while under the influence of alcohol as a felony (see, Vehicle and Traffic Law § 1192 [3]; § 1193 [1] [c]). His appeal requires us to decide the extent to which the specific contents of jurors’ notes must be disclosed to the defendant and defense counsel before a response is given. In the circumstances of this case, where the juror’s note was substantive and referred to difficulties the jury was having in reaching a verdict, we hold that the trial court committed reversible error when it failed to disclose the note’s contents before responding with an Allen charge.
The incident leading to defendant’s arrest began when the automobile defendant was driving hit another automobile that was traveling in the same direction. Defendant was arrested after the police officer who responded to the accident scene concluded from defendant’s behavior that he was intoxicated. At the police station, defendant refused to take a breathalyzer test,[1] but consented to participate in a number of performance tests designed to measure the degree to which his motor skills, balance and reflexes had been impaired.
The People’s trial evidence consisted principally of the results of these performance tests, as well as the arresting officer’s testimony about defendant’s behavior at the accident scene and his postarrest refusal to take a breathalyzer test. The defense concentrated its efforts on impeaching the police officer’s expertise and challenging the reliability of his conclusions as to defendant’s sobriety. The defense also called a longtime acquaintance of defendant’s family to the witness stand and elicited the fact that defendant had suffered severe back and leg injuries in a prior automobile accident.
After approximately five hours of deliberations and a re *275 charge on the meaning of "intoxication,” the jury sent out a note informing the Judge that it was "stalemated” and wished to know "how [to] proceed.” The court responded by sending the jury to dinner and to a hotel for the night. On the following day, the jury deliberated at length and made several requests for evidence and instruction, but was still unable to reach a verdict. On the third day of deliberations, the court received another deadlock note in which the foreman stated "I don’t see us ever reaching a unanimous verdict.” At that point, the court gave its first Allen charge (see, Allen v United States, 164 US 492).
Before the jury returned to resume deliberations, one of the jurors asked permission to speak to the Judge but was told to put his query in the form of a note. After receiving this juror’s note, the Judge brought the jury and counsel back into the courtroom and had the note marked as a court exhibit. The Judge declined to read the note aloud, however, because, in his view, reading it "would [not] serve any particular purpose * * * at this point.” Instead, the Judge summarized the "substance” of the note’s contents, stating that it "indicates that there are continued disagreements among the jurors.” After questioning five of the jurors and eliciting from four of them that a unanimous verdict was still possible, the Judge "implor[ed]” the jurors to try again and administered another Allen charge. When the jury was ushered out of the courtroom, the Judge elaborated upon his reasons for withholding the precise contents of the individual juror’s note, stating that he did not read it because "it indicate[d w]hat the present posture is as far as votes”. Defense counsel then unsuccessfully sought disclosure of the note’s contents.[2]
*276 The jury deliberated for the remainder of the afternoon, returning to the courtroom for one more testimonial readback. At 5:08 p.m., the jury brought in its guilty verdict. Defendant was subsequently sentenced to a one-to-three-year term of imprisonment. He now appeals, by permission of a Judge of this Court, from an order of the Appellate Division, Second Department, which affirmed the judgment of conviction. The primary issue he raises on this appeal is whether the trial court’s actions in relation to the individual juror’s note constitute reversible error.
We begin our analysis of this issue with CPL 310.30, which provides that a deliberating jury may request additional information or instruction "with respect to any * * * matter pertinent to [its] consideration of the case.” The statute further provides that "[u]pan such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant * * * must give such requested information or instruction as the court deems proper” (emphasis supplied). CPL 310.30 thus imposes two separate duties on the court following a substantive juror inquiry: the duty to notify counsel and the duty to respond. It has been held that the latter duty requires the court to give a response that is "meaningful” (see, e.g., People v Malloy, 55 NY2d 296, 301; People v Gonzalez, 293 NY 259, 262). We have not, however, previously addressed the separate, albeit related, question raised in this appeal — i.e., the scope of the court’s CPL 310.30 duty to provide counsel with "notice.”
The People have asked us to hold that the notice provision of the statute requires only that the court inform counsel of the existence of a juror inquiry and, perhaps, convey the inquiry’s basic substance. Thus, the People argue, the court’s obligation was satisfied here because counsel knew that a note had been sent out of the jury room and was advised that, in substance, it concerned the jurors’ "continuing] disagreements”. We cannot agree, however, that the statutory mandate should be read so narrowly.
The requirement that "notice” be given to counsel is not a mere formality or a procedural device designed only to ensure counsel’s presence in the courtroom when the court gives its response to the jurors’ request for information or instruction *277 (see generally, People v Ramsey, 40 AD2d 837, 838; People v Merrill, 286 App Div 307). While that is undoubtedly one of the statute’s purposes, an equally important purpose is to ensure that counsel has the opportunity to be heard before the response is given (see, Rogers v United States, 422 US 35, 39; United States v Ronder, 639 F2d 931, 934; United States v Robinson, 560 F2d 507, 516 [en banc], cert denied 435 US 905). Such an opportunity is essential to counsel’s ability to represent the client’s best interests and, further, to ensure the protection of the client’s constitutional and statutory rights at these critical postsubmission proceedings (see, People v Ciaccio, 47 NY2d 431, 436 [supplemental instructions, which are given in direct response to the jurors’ own questions, "may well be determinative of the outcome”]). Thus, just as CPL 310.30’s requirement that juror inquiries be answered mandates a "meaningful” response (see, People v Malloy, supra, at 301), so too does that statute’s "notice” requirement mandate notice that is meaningful.
We conclude that "meaningful” notice in this context means notice of the actual specific content of the jurors’ request. Manifestly, counsel cannot participate effectively or adequately protect the defendant’s rights if this specific information is not given. Indeed, the precise language and tone of the juror note may be critical to counsel’s analysis of the situation in the jury room and ability to frame intelligent suggestions for the fairest and least prejudicial response. Concomitantly, the Trial Judge’s summary of the "substance” of an inquiry cannot serve as a fair substitute for defense counsel’s own perusal of the communication, since it is defense counsel who is best equipped and most motivated to evaluate the inquiry and the proper responses in light of the defendant’s interests (cf., People v Jones, 70 NY2d 547, 550; People v Perez, 65 NY2d 154, 158).
We further hold that, in most cases, this requirement of meaningful notice is best served by following the procedure that was outlined in United States v Ronder (639 F2d 931, 934, supra; accord, People v Miller, 163 AD2d 491). Under this procedure, jurors’ inquiries must generally be submitted in writing, since, as the trial court in this case recognized, written communications are the surest method for affording the court and counsel an adequate opportunity to confer. Further, whenever a substantive written jury communication is received by the Judge, it should be marked as a court exhibit and, before the jury is recalled to the courtroom, read *278 into the record in the presence of counsel. Such a step would ensure a clear and complete record, thereby facilitating adequate and fair appellate review. After the contents of the inquiry are placed on the record, counsel should be afforded a full opportunity to suggest appropriate responses. As the court noted in Ronder (supra, at 934), the trial court should ordinarily apprise counsel of the substance of the responsive instruction it intends to give so that counsel can seek whatever modifications are deemed appropriate before the jury is exposed to the potentially harmful information. Finally, when the jury is returned to the courtroom, the communication should be read in open court so that the individual jurors can correct any inaccuracies in the transcription of the inquiry and, in cases where the communication was sent by an individual juror, the rest of the jury panel can appreciate the purpose of the court’s response and the context in which it is being made (id.).
To be sure, there are special circumstances in which the foregoing procedures will need to be modified or tailored to ensure the integrity of the deliberative process. For example, there may be situations in which the contents of an individual juror’s note cannot be shared with the rest of the jury because its substance is too personal or would exacerbate existing tensions. In such cases, alternatives such as redaction, paraphrasing and in camera colloquy may be considered (see, United States v Ronder, supra, at 934). In the final analysis, the choice of methods to be used to address particular idiosyncratic situations is a matter to be entrusted to the sound discretion of the trial courts, since it is impossible to predict or prescribe for the myriad of problems that may arise during the course of a jury’s deliberations. The point of the Ronder decision and our own decision here is not to mandate adherence to a rigid set of procedures, but rather to delineate a set of guidelines calculated to maximize participation by counsel at a time when counsel’s input is most meaningful, i.e., before the court gives its formal response. Accordingly, where there exist unique articulable circumstances that make the foregoing steps impractical, modified procedures that are equally conducive to participation by defense counsel are permissible.
Viewed in light of these principles, the trial court’s actions in this case were clearly inadequate. While the court initially acted properly by directing the individual juror who expressed difficulty to put his concerns in writing, the court’s subsequent decision to withhold the contents of the juror’s *279 note fell outside the acceptable bounds of its discretion. A court can neither serve the goal of maximizing counsel’s participation nor satisfy the CPL 310.30 requirement that meaningful notice be given when counsel is not afforded a verbatim account of a juror’s communication and is thereby deprived of an advance opportunity to suggest a response. Indeed, given the importance of counsel’s participation in this context (see, Rogers v United States, supra), it is difficult to imagine a situation in which a court would be justified in declining to show or read a juror’s note to counsel. Certainly, a concern such as that expressed by the trial court in this case, i.e., that the note’s contents might convey the status of the jury’s deliberations, cannot furnish an acceptable justification for the complete exclusion of the defendant’s attorney from the process of formulating a supplementary charge.
Having concluded that the trial court’s decision to withhold the contents of the juror’s note in this case constituted error, we turn now to the question of whether that error presents a ground for reversal. As a threshold matter, we note that the court’s error in failing to disclose the contents of the note had the effect of entirely preventing defense counsel from participating meaningfully in this critical stage of the trial and thus represented a significant departure from " ’the organization of the court or the mode of proceedings prescribed by law’ ” (People v Coons, 75 NY2d 796, 797, quoting People v Patterson, 39 NY2d 288, 295, affd 432 US 197; see, People v Mehmedi, 69 NY2d 759, 760; People v Ahmed, 66 NY2d 307, 310). Accordingly, the error presents a ’’question of law” within the meaning of CPL 470.05 (2), notwithstanding that defense counsel did not object to the court’s procedure until after the supplementary charge had been given.
Similarly, we reject the People’s argument that reversal is not required here because of the absence of specific prejudice (see generally, People v Agosto, 73 NY2d 963, 966; People v Lourido, 70 NY2d 428, 435; People v Miller, 6 NY2d 152, 156). Manifestly, defendant was prejudiced by the court’s actions, since the decision to withhold the contents of the juror’s note deprived him of the opportunity to have input, through counsel or otherwise,[3] into the court’s response to an important, *280 substantive juror inquiry. This case is thus distinguishable from People v Agosto (73 NY2d 963, supra), in which our Court found no prejudice, and therefore no cause for reversal, where a Trial Judge failed to respond to a juror inquiry, or even to notify defense counsel, before accepting the jury’s verdict. This Court held in Agosto that, in view of the Judge’s prior response pattern, his 20-minute delay in responding to the juror’s note, which requested early dismissal for Sabbath observance, could not have been construed by the jurors as a tacit denial of that request and therefore could not have operated, even subtly, to pressure the jury into a premature verdict. Since there was no supplementary instruction given in Agosto and the absence of a response was not itself capable of creating a "significant probability” of prejudice, the exclusion of counsel from the Judge’s decision-making process was also not prejudicial. The same certainly cannot be said where, as here, the trial court did respond to the juror’s inquiry with a substantive Allen instruction that was, unquestionably, intended to have an effect on the deliberative process. In this context, the court’s failure to notify counsel of the note’s contents, which resulted in a denial of the right to participate in the charging decision, was inherently prejudicial (cf., People v Jones, supra; People v Perez, supra).
Inasmuch as there must be a new trial because of the court’s error in handling the juror’s inquiry, we need not comment on most of defendant’s other claims of trial error. With respect to defendant’s complaint about the trial court’s denial of his pretrial motion to preclude evidence that he refused to take a breathalyzer test, we conclude that the ruling was not, as a matter of law, erroneous. The record supports the finding that defendant was afforded an adequate opportunity to consult with counsel (see, People v Gursey, 22 NY2d 224, 229) and was accurately apprised of the consequences of his refusal to submit to the test (see, Vehicle and Traffic Law § 1194 [2] [f]). When viewed in the context of defendant’s statement to police that his attorney could not be contacted for several hours, the police officer’s statement to him that his insistence on waiting for his attorney constituted a refusal was not misleading or inaccurate (see, People v Gursey, supra). Moreover, although the officer’s additional *281 statement that defendant’s license would be revoked upon his refusal and would be restored only by order of a court was inaccurate (see, Vehicle and Traffic Law § 1194 [2] [d] [1]; 15 NYCRR 136.1 et seq. [license to be restored only at discretion of Commissioner of Motor Vehicles]), the erroneous information was not material for these purposes and, consequently, could not have had an influence on defendant’s decision to refuse. Thus, there was no impropriety in the use of defendant’s refusal to take a breathalyzer test as part of the People’s evidence-in-chief (cf., People v Boone, 71 AD2d 859).
Accordingly, for the reasons stated above, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
Order reversed, etc.

. Defendant indicated that he would not submit to a breathalyzer test without first speaking with his attorney. However, when he was offered an opportunity to telephone his attorney, defendant declined, stating that it was too late to get in touch with the attorney at that point.

. The juror’s note was as follows:
"Your honor,
"I feel I am having problems and need more direction than you and or the court is giving me.
"I have listened as a reasonable person and have a great deal of respect for the opinions of the people in the room.
"I do however believe that there are people who are so set including myself who are looking at the same evidence in such opposite ways that it doesn’t seem that I am going to change my mind (either side).
"Repeating (the evidence so many times just pushes people further apart.) Other aspects are coming into play * * * people’s attitudes and actions. I don’t feel I can honestly come up with a different decision than I have. I am not the only one on the jury who feels this way but may be the only one that has conviction enough to say so.
"We are split down the middle HELP 6/6.” (Emphasis in original.)

. Inasmuch as we rest our decision on the fact that defendant’s attorney was denied a meaningful opportunity to participate in this critical stage of the proceeding thereby depriving defendant of his fundamental right to be represented effectively by counsel, we need not consider defendant’s alterna *280 tive argument that the court’s actions violated his own CPL 310.30 right to be present during supplementary instruction proceedings (cf., People v Rodriguez, 76 NY2d 918).