[597 NYS2d 347]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FAYE
TAYLOR, Appellant.

First Department, May 11, 1993

## APPEARANCES OF COUNSEL

*E. Joshua Rosenkranz* of counsel, New York City *(Tamara Detloff* with him on the brief), for appellant.

*Judith S. Karpen* of counsel, New York City *(Norman Barclay* and *Karen L. Mallory* with her on the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

## OPINION OF THE COURT

ROSENBERGER, J.

The judgment must be reversed and a new trial ordered based on the trial court's failure to abide by CPL 310.30. By responding to the notes submitted by the jury during its deliberations without first showing them to and reviewing them with defense counsel, it precluded counsel from having an opportunity to be heard before responses were given, thereby impinging on her ability to "participate effectively or adequately [to] protect the defendant's rights" *(People v O'Rama,* 78 NY2d 270, 277; *and see, United States v Ronder,* 639 F2d 931).

The defendant was convicted of two counts of assault in the second degree and one count of endangering the welfare of a child. The evidence was legally sufficient to establish the defendant's guilt, and the verdict was not against the weight of the evidence (CPL 470.15 [5]).

Shortly after they began their deliberations, the jurors sent two notes to the court requesting further instruction. When defense counsel asked to see the notes, the Trial Judge replied: "I'll give it to you as soon as they [the jury] come out. But I will put it on the record." After the jurors were brought into the courtroom, the Judge told them that "I have received from you two notes. One of these notes reads as follows: 'We, the jury, request a fuller explanation of intent.'" The court then proceeded to redefine "intent" without first hearing counsel.

The Judge then addressed the second note in which the jury requested "[a] complete statement or explanation of the tenth count of the indictment. All exhibits." The court responded, again without first discussing the note with counsel: "Now, all

of the exhibits have been sent in to you and signed by your foreman. I asked that my court officer interrupt your deliberations to ask you to send out a second note clarifying what you mean by a complete or explanation of the tenth count of the indictment." The court indicated, that in response, someone, presumably the foreman, crossed out a portion of its original note and rewrote a request for a "rereading of the tenth charge as given in the Judge's original charge." The Judge then reread the tenth count of the indictment and the related charge on the law. There was no objection lodged by defense counsel.

The jury resumed its deliberations, but thereafter sent out another note requesting a rereading of the testimony of three of the medical witnesses "pertaining to the oblique fractures only." The medical witnesses had testified that the fractures discovered in the child's bones were of two types, "corner" and "oblique". The testimony indicated that corner fractures occur when a limb is pulled and twisted.

Defense counsel asked the court if she could see the note before the jury was brought into the courtroom, prompting the following exchange:

"THE COURT: I know. Bring the jury out. I'll read it.

"DEFENSE COUNSEL: Judge, my client is entitled to know what the jury sent out for me to observe it, to have a discussion with the Court about it.

"THE COURT: Nothing to discuss. Asked for rereading. You can challenge anything you want when it's reread.

"DEFENSE COUNSEL: You're denying her any right to a critical stage of the proceeding.

"THE COURT: Bring the jury out."

The Judge informed the jury that the requested testimony had been found. The court reporter then reread it. After the readback, defense counsel again asked to see the note and challenged the "system" employed by the court in responding to the jury's notes. As she stated, the jury sent the note at 5:10, but did not get the readback until 7:00. Although she did not know what transpired during this time, counsel informed the court that, had she been notified of the contents of the note, she would have requested that additional testimony beyond that found by the court reporters be reread to the jury. She added that since she was not informed of the jury's note, she was unable to "look through [her] records, make an intelligent decision, and refer to the Court what should be

read to the jury." She further argued that her client had the right to be involved in this critical stage of the proceedings. Counsel also expressed her objection to the court's decision to seek clarification from the jury on its first note, via the court officer, without first giving the defense an opportunity to be heard.

The following day, the jury requested "Information regarding the nine counts of assault. Do the nine counts refer to specific fractures? Such as the oblique fractures? If so, which count referred to the oblique fractures?" In contrast to its previous policy, the court showed this note to counsel before responding. However, when counsel asked what the court "intended to do in response to the note" the Judge stated that she "intend[ed] to respond. There is no specifics in the indictment."

The court responded to the note by telling the jury that each count pertained to a different bone fracture and that that was the reason why nine counts were submitted. She then reread the assault in the second degree count of the indictment. Defense counsel did not object to this response.

A court, upon receiving a request from a jury for further instruction or information, must provide meaningful notice of the request to both the People and the defense (CPL 310.30; *People v O'Rama, supra,* at 277). Notice is meaningful only if counsel is informed of the specific contents of the request and provided with the opportunity to be heard *before* the response is given. This is essential to counsel's duty to represent his or her client zealously and to "ensure the protection of the client's constitutional and statutory rights at these critical postsubmission proceedings" *(supra,* at 277).

In *O'Rama (supra,* at 277), the Court condemned the process by which a Trial Judge merely summarizes the contents of a jury note for counsel, since the precise language and tone of the note "may be critical to counsel's analysis of the situation in the jury room and ability to frame intelligent suggestions for the fairest and least prejudicial response". Preventing attorneys from seeing the specific content of the note also prevents them from acting to protect the defendant's rights.

The Trial Judge in this case did not go so far as to provide counsel with a mere summary of the contents of the notes, preferring, instead, to inform her of their contents at the time she responded to the jury. By this procedure, counsel was completely precluded from having an opportunity effectively

to object to or propose responses. The defendant was thus deprived of the right to have counsel actively participate in a critical stage of the proceedings.

As stated in *O'Rama (supra,* at 279), "[a] court can neither serve the goal of maximizing counsel's participation nor satisfy the CPL 310.30 requirement that meaningful notice be given when counsel is not afforded a verbatim account of a juror's communication and is thereby deprived of an advance opportunity to suggest a response. Indeed, given the importance of counsel's participation in this context *(see, Rogers v United States* [422 US 35], *supra),* it is difficult to imagine a situation in which a court would be justified in declining to show or read a juror's note to counsel."

The People's suggestion that the error was harmless because the jury requests did not pertain to "substantive" issues going to the "heart of the deliberative process", requiring "input from counsel" clearly misconstrues the nature of the jury requests and the holding of *O'Rama (supra).* The information requested focused on critical issues determinative of this closely contested matter.

In light of the foregoing, we do not reach the defendant's remaining contentions.

Accordingly, the judgment of the Supreme Court, New York County (Dorothy Cropper, J.), rendered November 20, 1991, which convicted the defendant, upon a jury verdict, of two counts of assault in the second degree and one count of endangering the welfare of a child and sentenced her to concurrent terms of imprisonment of from 2⅓ to 7 years on the assault counts and to one year on the remaining count should be reversed, on the law, and a new trial ordered. Motion by defendant-appellant to enlarge the record on appeal, denied.

KUPFERMAN, J. (concurring). While I concur in the result on the authority of *People v O'Rama* (78 NY2d 270, 277), the majority's analysis goes somewhat further than the situation warrants.

Logically, it does not require input of counsel to seek clarification of a jury's note inquiry. *(Cf., People v Payne,* 135 AD2d 746, 747, *lv denied* 71 NY2d 900.)

Moreover, if a jury requests a rereading of a charge, while counsel may request an additional reading, the court in its sound discretion is not obliged to comply with such request. *(Cf., People v Pena,* 50 NY2d 400, 410.)

MILONAS, J. P., ASCH and KASSAL, JJ., concur with ROSEN-BERGER, J.; KUPFERMAN, J., concurs in a separate opinion.

Judgment of the Supreme Court, New York County, rendered November 20, 1991 which convicted the defendant, upon a jury verdict, of two counts of assault in the second degree and one count of endangering the welfare of a child and sentenced her to concurrent terms of imprisonment of from 2⅓ to 7 years on the assault counts and to one year on the remaining count is reversed, on the law, and a new trial ordered. Motion by defendant-appellant to enlarge the record on appeal, denied.