OPINION OF THE COURT
Tom, J.
Defendant was tried on an indictment charging him with five counts of robbery in the first degree and five counts of robbery in the third degree in connection with the separate robberies of three men delivering Chinese food. The robberies of the three victims were committed, severally, on August 3 and 9, 2004, on July 14 and 26, 2004 and on July 20, 2004. During the course of deliberations, the jury sent several notes to the court, one of which stated, “Would like to know how to proceed, considering that we are COMPLETELY SPLIT on all counts. Deliberation and re-reading of testimony has not seemed to change this division.” The note was read into the record. Since it was a Friday afternoon, the court excused the jurors for the weekend. The court informed counsel that it had intended to deliver an Allen *104 charge but, because one juror had already left the courthouse, it was simply directing the jurors to return after the weekend.
After the jury resumed deliberations the following Monday, another note was received late in the morning, which stated, “Want to reiterate that (even after continued discussion this morning) we are split on ALL of the counts in this case. We feel that we have heard and considered each other’s arguments but have made little or no progress. How should we proceed?”
In response, the court delivered an Allen charge. After the jurors withdrew to resume their deliberations, the court apologized for not affording counsel an opportunity to comment on the jury note, explaining that it was “basically . . . very similar to the note we received on Friday.” Both sides agreed that the Allen charge was an appropriate response to the inquiry.
At 4:15 in the afternoon, a second note was received, which read:
“Are still divided as follows regarding alleged robberies on:
7/14/04 8 to 4
7/26/04 11 to 1
7/20/04 10 to 2
8/3/04 11 to 1
8/9/04 11 to 1”
The court did not read the note into the record, but gave the following summary of its contents:
“we the jury are still divided as follows: Regarding the alleged robberies on 7/14/04 and actually gives what the split is. That’s why I’m not showing anybody. It does not indicate how it goes, but it’s giving numbers and then it just repeats the rest of the dates giving a split as to each robbery date. Out of the five there are three different splits. No indication as to which way they go . . .
“Again, I didn’t show this to counsel because it’s an open debate as to whether this is appropriate to let you see what those numbers are at this time.”
Defense counsel then asked the court to declare a hung jury, to which the prosecutor voiced opposition, noting that the jurors had only deliberated for nine hours. The court then delivered a second Allen charge, sending the jurors back to deliberate further, after which it showed the note to counsel.
*105 At 2:29 p.m. on the following day, the jurors sent a final note stating that they had reached “a decision on ONE of the charges; however, due to our strong beliefs and convictions—we are deadlocked on ALL OTHER charges.” After the note, which is not at issue, was read by counsel, the court declared its intention to accept a split verdict and discharge the jury. The prosecutor responded by stating for the record that the jurors had deliberated for 12 hours, and defense counsel said nothing. The jurors returned a verdict finding defendant guilty of the robbery of August 9, 2004, count nine of the indictment, and were undecided on the remaining counts.
On appeal, defendant contends that the court erred in responding to the jury’s first Monday note declaring that it was deadlocked by neither reading the note to the parties nor affording them an opportunity to be heard with respect to the appropriate response before delivering an Allen charge. Similarly, defendant contends that the court erred in responding to the jury’s second deadlock note of the day setting forth the numerical split in its votes on the various counts by neither reading the note verbatim nor soliciting counsel’s suggestions before delivering a second Allen charge.
As a procedural rule, where a jury requests instruction regarding any matter relevant to its deliberations, “the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, . . . must give such requested information or instruction as the court deems proper” (CPL 310.30). Upon entertaining a substantive juror inquiry, “the trial court’s core responsibility under the statute is both to give meaningful notice to counsel of the specific content of the jurors’ request—in order to ensure counsel’s opportunity to frame intelligent suggestions for the fairest and least prejudicial response—and to provide a meaningful response to the jury” (People v Kisoon, 8 NY3d 129, 134 [2007]). In this context, notice that is “meaningful” is “notice of the actual specific content of the jurors’ request” (People v O’Rama, 78 NY2d 270, 277 [1991]). A court gives meaningful notice when it reads the jury note into the record in the presence of counsel prior to recalling the jury to the courtroom, provides opposing counsel with an opportunity to recommend an appropriate response, informs counsel of the court’s intended response and, finally, reads the note in open court so that the jury can assess the accuracy with which its inquiry was conveyed to the court and the context and purpose of the court’s response *106 (id. at 277-278, citing United States v Ronder, 639 F2d 931, 934 [1981]). Significantly, both O’Rama and Kisoon concern the failure to specifically disclose to counsel the actual contents of a note quantifying the split among jurors.
In O’Rama, which likewise construed CPL 310.30, the Court of Appeals stated that it was not the Court’s intention “to mandate adherence to a rigid set of procedures, but rather to delineate a set of guidelines calculated to maximize participation by counsel at a time when counsel’s input is most meaningful, i.e., before the court gives its formal response” (78 NY2d at 278). Departure from the guidelines is permitted for what the Court termed “special circumstances,” under which “the choice of methods to be used to address particular idiosyncratic situations is . . . entrusted to the sound discretion of the trial courts” (id.). By way of example, the Court cited situations in which disclosure would be inappropriate because the substance of the note is personal to a particular juror or because the views expressed therein would exacerbate tensions among the members of the panel (id.).
In Kisoon, the Court of Appeals cautioned that, in general, “failure to read the note verbatim deprive [s] counsel of the opportunity to accurately analyze the jury’s deliberations and frame intelligent suggestions for the court’s response” (8 NY3d at 135). Furthermore, such an omission constitutes “a failure to fulfill the court’s core responsibility” and is not subject to the normal rule requiring a defendant to preserve an error for appellate review by raising a timely objection (id.). The Court concluded its discussion by “underscoring] the desirability of adherence to the procedures outlined in O’Rama” (id.).
A practical construction of the case law, as we view it, is that in addressing any substantive juror inquiry the procedure outlined in O’Rama should be followed (cf. People v Figueroa, 48 AD3d 324, 326 [2008]), except when “particular idiosyncratic situations” can only be addressed by resort to improvised methods (see O’Rama, 78 NY2d at 278). Consistent use of the procedure has the salutary effect of avoiding misunderstanding concerning the interpretation of a jury’s communication, the answers proposed by opposing counsel and the propriety of the court’s response (cf. People v Fishon, 47 AD3d 591, 592 [2008], lv denied 10 NY3d 958 [2008] [“unrecorded colloquy”]). It also assists counsel in making a sufficient record of the proceedings to enable appellate review (cf. People v Williams, 50 AD3d 472, 473 [2008], lv denied 10 NY3d 940 [2008]). In those “particular *107 idiosyncratic situations” that warrant departing from the guidelines, the record should clearly reflect the “special circumstances” requiring the court to modify or tailor the procedure “to ensure the integrity of the deliberative process” (O’Rama, 78 NY2d at 278).
 We perceive no such special circumstances in the matter at bar. The court’s methodology in formulating the responses asserted to constitute error represents a departure from the procedure specified in O’Rama. However, we note that the court’s delivery of an Allen charge in response to the first disputed jury note was preceded by the disclosure to counsel, on the preceding Friday, that it had been the court’s intention to give an Allen charge in response to a similar note, received that afternoon, likewise indicating that the jury was deadlocked. Thus, the occasion provided the parties with the requisite opportunity to make alternative recommendations. Moreover, the Allen charge was expressly approved by both defense counsel and the prosecutor, after its delivery, as the appropriate response to the disputed note. Even if counsel had not been provided with an opportunity to be heard and the asserted error could thus be said to implicate the mode of proceedings, thereby obviating the preservation requirement (see Kisoon, 8 NY3d at 135), a defendant will not be heard to assign as error on appeal a response to which he specifically assented at trial. The affirmative expression of approval by defendant in this matter constituted a ratification of the court’s chosen procedure and effected a waiver of any objection (cf People v Gajadhar, 9 NY3d 438 [2007], affg 38 AD3d 127 [2007] [waiver of trial by jury of 12 requires compliance with constitutionally mandated procedure]).
Defendant did not, however, express consent to the court’s response to the second note, and the failure to read it verbatim to counsel before delivering another Allen charge is reversible error. Discussion of the note was confined to whether the court should declare the jury deadlocked, and the court’s decision to give a second Allen charge was reached without any input from defense counsel.
Because the jury note did not specify whether the numerical split among the jurors with respect to the various robbery counts was in favor of conviction or acquittal, the People argue that this information was equivocal at best and that any prejudice sustained by defendant was de minimis. The dissenter adopts the People’s conclusion that because the court summa *108 rized the contents of the note prior to delivering its response and showed the note to the parties after the jurors resumed their deliberations, defendant was required to preserve any asserted error in the procedure by stating his objection.
This matter is indistinguishable from Kisoon and O’Rama. A “Trial Judge’s summary of the ‘substance’ of an inquiry cannot serve as a fair substitute for defense counsel’s own perusal of the communication, since it is defense counsel who is best equipped and most motivated to evaluate the inquiry and the proper responses in light of the defendant’s interests” (O’Rama, 78 NY2d at 277). Thus, the court’s failure to disclose the “actual specific content of the jurors’ request” (id.) deprived defendant of the opportunity to meaningfully participate in formulating a response (cf. People v Starling, 85 NY2d 509, 516 [1995] [entire contents of jurors’ notes read in open court]). By averting defendant’s input “into the court’s response to an important, substantive juror inquiry” (O’Rama, 78 NY2d at 279-280) before giving its response (id. at 278), the court failed to fulfill its “core responsibility ... to give meaningful notice to counsel of the specific content of the jurors’ request” (Kisoon, 8 NY3d at 134), and reversal is required irrespective of the absence of objection (id. at 135; cf. People v DeRosario, 81 NY2d 801, 803 [1993] [“defense counsel was present, was given notice, and participated in formulating the responses to the written jury queries”]). Contrary to the dissenter’s contention, the court’s omission renders consideration of whether defendant sustained prejudice immaterial, and reversal is mandated.
In view of this disposition, it is unnecessary to reach defendant’s remaining contentions.
Accordingly, the judgment of the Supreme Court, Bronx County (Robert E. Torres, J.), rendered November 2, 2006, convicting defendant, after a jury trial, of robbery in the first degree, and sentencing him to a term of 12 years, should be reversed, on the law, and the matter remanded for a new trial.