Chief Judge Lippman
(dissenting). A deliberating jury’s request for supplemental instruction or information we have often observed may well mark a trial’s turning point (see e.g. People v Kisoon, 8 NY3d 129, 134-135 [2007]; People v Ciaccio, 47 NY2d 431, 436 [1979]). For this reason, the law, both statutory and judge-made, places upon trial courts in receipt of post-submission jury inquiries of a substantive sort special nonwaivable responsibilities in default of which an ensuing conviction will in this state, without more, be rendered infirm: the court must respond to the jury meaningfully, and preparatory to doing so must take steps to assure that the response given is the product of a process in which the defendant has had a full opportunity to participate with the assistance of counsel (CPL 310.30; People v O’Rama, 78 NY2d 270, 279-280 [1991]; and see People v Silva, 24 NY3d 294, 299 [2014]; People v Alcide, 21 NY3d 687, 692 [2013]). This appeal asks what process is minimally adequate to satisfy the latter, constitutionally grounded (see United States v Robinson, 560 F2d 507 [1977 *164 en banc], cert denied 435 US 905 [1978]; People v Ciaccio, 47 NY2d at 436) requirement.
The majority has responded, purportedly under the compulsion of this Court’s precedents, that a court discharges its “core” obligation to afford a defendant and his or her attorney meaningful notice of a substantive jury inquiry simply by reading the note verbatim in open court with the parties, counsel and the jury present. And, it is true that there are cases in which we have held that that is enough. But we have never, until today, said that it is always enough. That development is, in my view, a major and imprudent step, not only uncompelled by, but significantly at odds with our jurisprudence, which has, at least since our 1991 decision in People v O’Rama (78 NY2d 270 [1991]), been rooted in the principle that the notice of a substantive jury inquiry mandated by CPL 310.30 must, even if not given in strict accordance with a prescribed protocol, be notice “calculated to maximize participation by counsel at a time when counsel’s input is most meaningful, i.e., before the court gives its formal response” (O’Rama, 78 NY2d at 278 [emphasis supplied]).
The majority’s assertion that the O’Rama “goal of maximizing counsel’s participation” {id. at 279) will invariably be met by the trial court’s reading of the note in open court just prior to delivering its response, since the defendant and his attorney will at the instant of audition have “all the knowledge required to make an objection” (majority op at 162), betrays a serious misconception of what maximal participation by counsel entails at this uniquely crucial juncture of a criminal trial. The core obligation recognized by O’Rama is not that of enabling an objection, but of enabling counsel’s full substantive participation, and to that end O’Rama prescribed not a one, but a four-step protocol to assure, without the need for an objection in the presence of the jury, counsel’s inclusion in the process of shaping a meaningful response to the jury’s query.
The procedure generally required by O’Rama was not a random, overwrought product of judicial imagination run amok, but one that long experience had shown to be ordinarily essential to the honor of a defendant’s basic rights of presence, participation and representation at material stages of the trial; the identical procedure had been prescribed a decade before in United States v Ronder (639 F2d 931, 934 [2d Cir 1981]) as the “proper practice” to satisfy settled law that “messages from a jury should be disclosed to counsel and that counsel should be *165 afforded an opportunity to be heard before the trial judge responds” (id.). Integral to that “proper practice” is compliance with the instruction that the initial disclosure to counsel of the jury’s inquiry should take place out of the jury’s presence, after which, and still without the presence of the jury, “counsel should be afforded a full opportunity to suggest appropriate responses” (O’Rama, 78 NY2d at 278). And, O’Rama is clear that ordinarily “a full opportunity to suggest appropriate responses” is not afforded unless “the trial court. . . apprise [s] counsel of the substance of the responsive instruction it intends to give so that counsel can seek whatever modifications are deemed appropriate before the jury is exposed to the potentially harmful information” (id.). There is nothing in O’Rama to suggest, as the majority now posits, that these parts of the prescribed procedure are generally inessential to the satisfaction of the trial court’s “core” notice obligation. Were they utterly dispensible to the satisfaction of that duty, the Court would not have troubled to prescribe them.
It is true that O’Rama recognized that strict adherence to its notice protocol might not always be practicable or advisable and accordingly that trial courts possessed discretion to employ modified procedures “equally conducive to participation by defense counsel” (id. at 278). But this dispensation was made available only where such a departure was supported by “unique articulable circumstances” (id.). The majority fails to identify any “unique articulable circumstances” to support the presently challenged departure, and it is obvious that the truncated procedure employed by the trial court was not “equally conducive to participation by defense counsel” as the one prescribed in O’Rama.
The majority defends its dramatic paring of O’Rama’s core notice obligation by positing that, of the steps in the notice protocol, only the reading of the note to counsel is essential to counsel’s participation, at least to the extent of lodging an objection. But if all that was required to discharge the notice obligation imposed by CPL 310.30 and O’Rama was objection-enabling disclosure, O’Rama itself would have been decided differently, as would Kisoon and its companion case People v Martin (8 NY3d 129 [2007]). In each of those cases, counsel knew that there was a jury note the full text of which had not been disclosed and could have objected to the nondisclosure of the note’s full content (see O’Rama, 78 NY2d at 275; Kisoon, 8 NY3d at 132; Martin, 8 NY3d at 133). What these cases tell us, *166 then, is that objection-enabling notice is not enough to meet the trial court’s core notice obligation when presented with a post-submission substantive jury inquiry. While counsel may be better able to frame an objection once he or she has heard a jury note read aloud, if counsel hears the note for the first time when the note is read to the jury and directly before the court’s intended response, as was the case here, realistically all counsel is being offered is the opportunity to object in front of the jury, not to participate fully and substantively. Contrary to what appears to be the majority’s basic premise, the relevant core objective of O’Rama is not to assure that counsel will be able to object, practically on the spur of the moment, to a court’s imminent delivery of a supplemental jury instruction, the content and wording of which are as yet undisclosed, but to obviate the need for such a blind objection — particularly one in front of the jury seeming to telegraph the defendant’s view that what the court is about to say may well be unfavorable to his case — by affording defense counsel, as a matter of essential nonwaivable process, notice “calculated to maximize [his or her] participation” on the client’s behalf at what may well be the tipping point of the trial. The pertinent question, then, in assessing whether there has been an O’Rama mode of proceedings violation is precisely not whether counsel has had the opportunity to object, but whether counsel, without having had to object, has been afforded notice of the jury query designed to maximize his opportunity to propose and advocate on the record for a responsive instruction at once appropriate and minimally if at all prejudicial to his client’s prospects for a favorable verdict.
Conceptually, of course, whether an error is deemed to compromise the basic structure of a trial and thus to qualify as one affecting the mode of proceedings cannot depend upon whether it involves a deviation as to which an objection is capable of being made. Mode of proceedings errors are by reason of their fundamental incompatibility with essential process nonwaivable (see People v Patterson, 39 NY2d 288, 295 [1976]). Neither the gravity of such error nor the consequently primary judicial obligation to avoid its commission is logically diminished or relieved by reason of the circumstance that a defendant is able to, but does not contemporaneously, protest its occurrence.
None of the cases upon which the majority relies is properly cited for the broad contrary proposition that a trial court’s core *167 CPL 310.30 mode of proceedings notice obligation is necessarily discharged simply by reading a jury note aloud so as to enable an objection. In People v Starling (85 NY2d 509 [1995]), we held that there was no mode of proceedings error where “defense counsel was given notice of the contents of the jury notes and had knowledge of the substance of the court’s intended response — a verbatim rereading of the intent charge previously given on several occasions” (id. at 516 [emphasis supplied]). In People v Ramirez (15 NY3d 824 [2010]) as well, the conclusion that there had been no mode of proceedings error rested upon the circumstance that “defense counsel had notice of the contents of the note and the court’s response” (id. at 825-826 [emphasis supplied]). Similarly, in People v Williams (21 NY3d 932 [2013]), because it was objectively evident that the court would respond to the jury’s note requesting clarification of a legal term by simply reading back the portion of the previously conferenced charge defining the term, the court’s single reading of the note, in open court, to defense counsel and the jury, while involving an elision of the procedure outlined in O’Rama, was deemed sufficient to satisfy the statutory notice requirement and thus to remove the departure from the mode of proceedings rubric. And, in the last of the cases upon which the majority primarily relies, People v Alcide (21 NY3d 687 [2013]), all that was requested by the jury were specified readbacks and, as we noted, “the judge explained exactly how he was going to conduct the readbacks” (id. at 694).
These cases presented situations in which counsel knew what the court’s response would be and it was objectively evident that, although the inquiries were substantive, the responsive options were so limited as to render counsel’s participation in addressing them minimally useful.* This case is different. It is not one in which the jury requested a simple readback of a clearly specified portion of the trial record or of a previously conferenced charge, or one in which it was otherwise obvious *168 in advance of the court’s response what that response would be. Nor, more importantly, was it a case in which the court’s response was so dictated in style and substance by the jury’s inquiry as to render counsel’s participation in its formulation practically superfluous. Here, the jury notes seeking, among other things, clarification of the difference between first- and second-degree robbery and of whether the degree of injury “count [ed] towards [first] or [second] degree” (the jury note did not specify whether this reference was to robbery or assault or both) necessarily involved the court in an ambiguously framed discussion of substantive law that might have been approached and accomplished in numerous ways, some more benign to defendant than others. Especially given the lack of clarity in the jury’s request, counsel’s participation in the process of honing a meaningful response was not evidently superfluous and likely would have resulted in an instruction less muddled, incorrect and potentially prejudicial than the one the trial court extemporized on its own. Because the court, without articulable justification, departed from the O’Rama notice protocol, and in so doing failed to employ a procedure equally conducive to maximizing counsel’s opportunity to participate in the formulation of the supplemental jury instruction — relegating counsel instead to a fleeting Hobson’s choice between not participating at all and lodging an open court objection to the giving of a yet undisclosed supplemental charge about which no substantive critique could then have been made — it is plain that O’Rama’s core mandate of meaningful notice was not met. Certainly, this was not notice “calculated to maximize participation by counsel” (O’Rama, 78 NY2d at 278).
The majority expresses trepidation that treating the present species of O’Rama departure as a mode of proceedings error would not in the end maximize, but create a disincentive to participation by defense counsel, since freed by the mode of proceedings doctrine from the need to object in order to preserve an O’Rama claim for appellate review, counsel could and would sit silently and allow the court to err so as to assure a reversal on appeal in the event of a conviction. But apart from the lack of any empirical basis for the prediction that defense counsel generally would elect not to zealously represent their clients at trial in order to bank an appellate reversal years down the line, the majority’s concern demonstrates a confusion over whose conduct the mode of proceedings doctrine is intended to regulate. It is not counsel’s conduct that is the *169 primary concern of the doctrine, but the court’s. The doctrine recognizes that it is the court, not counsel, that is best situated to assure that the correct procedure is followed when a note requesting instruction issues from a deliberating jury, and that when the court discharges its core obligations there will be no opportunity for gamesmanship of the sort feared.
The most effective way of both eliminating gamesmanship from, and assuring the full participation of counsel in, the critical phase of the trial initiated by a substantive post-submission jury inquiry is for appellate courts generally to demand scrupulous adherence to the not overly complex mode of proceeding prescribed in O’Rama. To the extent that we narrow the application of the mode of proceeding doctrine in this context, experience teaches that the price will be the toleration of a very serious species of error typically situated at the crux of a criminal trial — error which will predictably flourish in the ample shade of the preservation and harmless error doctrines. As the Appellate Division evidently understood, a dominant concern of this Court for the last 25 years has been to avoid such a degradation of essential process. Today’s decisions, resting on a fairly obvious overreading of four fact-sensitive decisions to express a severe limitation of appellate oversight of the process following from a trial court’s receipt of a substantive jury inquiry, lose sight of, and break with that jurisprudential context. And although the result of doing so in these cases may seem satisfying, there is good reason to fear that longitudinally this modern approach will not enhance, but impair the quality of the adversary process and the reliability of its outcome. For these reasons I dissent and would affirm the order of the Appellate Division.
Judges Pigott, Abdus-Salaam and Stein concur; Chief Judge Lippman dissents and votes to affirm in an opinion in which Judge Rivera concurs.
Order reversed and case remitted to the Appellate Division, Second Department, for consideration of the facts and issues raised but not determined on the appeal to that Court.

 The majority insists that this sentence reflects a proposed “rule” which it then attempts to state with great specificity (majority op at 161 n). To the extent that any rule is adverted to, however, it is that stated in O’Rama, namely, that where there are articulable circumstances to justify a deviation from the prescribed protocol and the deviation does not under the circumstances operate to abridge counsel’s opportunity to participate maximally, the departure will not stand in the way of concluding that the court met its core notice obligation (78 NY2d at 278). There is nothing unworkable about this rule; it is the rule that the Court has, until today, applied.