■ The People of the State of New York, Respondent, v Joel Farez, Appellant. [55 NYS3d 177]—

Judgment, Supreme Court, Bronx County (Eugene Oliver, Jr., J.), rendered February 6, 2015, convicting defendant, after a jury trial, of criminal possession of a controlled substance in the fifth degree, and sentencing him, as a second felony drug offender, to a term of 3 years, reversed, on the law, and the matter remanded for a new trial.

Supreme Court improperly limited both defense counsel's discovery of *Rosario* material and his ability to cross-examine the police witnesses at trial. The *Rosario* material in question consisted of police documentation of the arrest of a third party. Supreme Court denied defendant's discovery request, rejecting his trial counsel's argument that defendant and the third party, both Hispanic males, had been contemporaneously arrested and separately charged with selling drugs to the same undercover officer at approximately the same time and location. In the absence of Supreme Court's discovery limitations, defense counsel might have reasonably established a motive to fabricate the evidence due to police confusion between defendant and the third party (*see People v Hudy*, 73 NY2d 40, 56 [1988] ["extrinsic proof tending to establish a reason to fabricate is never collateral and may not be excluded on that ground"], *overruled in part on unrelated grounds by Carmell v Texas*, 529 US 513 [2000]). Furthermore, as we have stated, where there is evidence raising the possibility of a "police motive to fabricate," cross-examination of police witnesses is "highly relevant" (*People v Rios*, 223 AD2d 390, 392 [1st Dept 1996], *appeal withdrawn* 87 NY2d 1024 [1996]). Thus, Supreme Court's errors deprived defendant of his right to present a defense (*see Hudy*, 73 NY2d at 56; *Rios*, 223 AD2d at 392). As there was "a reasonable possibility that the non-disclosure materially contributed to the result of the trial" (CPL 240.75), Supreme Court's errors were not "harmless beyond a reasonable doubt" (*People v Crimmins*, 36 NY2d 230, 237 [1975]).

Were we not reversing on the basis of error regarding the *Rosario* material and the related cross-examination, we would reverse on another ground—namely, Supreme Court's communication with the jury off the record and outside the presence of defendant and his counsel. After the jurors had been deliberating for four days, they sent a note to the court stating they were deadlocked on the third count of the indictment and asking for guidance. The court discharged the jury for the day in contemplation of taking further actions, possibly including the delivery of an *Allen* charge, in the morning. The next morning, in defendant's and his counsel's absence, the court instructed the jury, off the record, to resume deliberations. The same afternoon, the court informed defendant and his counsel of this instruction, and counsel did not object.

"[T]he presence of the defendant and his counsel is constitutionally required whenever supplemental instructions are given, and failure to notify them is a fundamental error" (*People v Ciaccio*, 47 NY2d 431, 436-437 [1979]). Moreover, "CPL

310.30 makes a defendant's right to be present during instructions to the jury absolute and unequivocal" (*People v Mehmedi*, 69 NY2d 759, 760 [1987]). Here, the absence of defendant and his counsel during the court's undisputedly substantive instruction to resume deliberating notwithstanding the reported deadlock was a mode of proceedings error, requiring reversal despite the lack of any objection (*id.* at 760; *see also People v Bonilla*, 186 AD2d 748, 748 [2d Dept 1992]). Additionally, harmless error analysis is inapplicable (*see Mehmedi*, 69 NY2d at 760). Concur—Sweeny, J.P., Moskowitz and Gesmer, JJ.

Andrias and Kahn, JJ., concur in a separate memorandum by Andrias, J., as follows: I agree with the majority that the judgment convicting defendant of criminal possession of a controlled substance in the fifth degree should be reversed, and the matter remanded for a new trial, on the grounds that the trial court improperly limited both defense counsel's discovery of *Rosario* material and his ability to cross-examine the police witnesses at trial. However, I write separately because, under the particular circumstances of this case, I disagree with the majority's alternative holding that the court committed a mode of proceedings error, requiring reversal without preservation, when, upon the jurors' return to the courthouse on the morning of November 18, 2014, it communicated to them, off the record and outside the presence of defendant and counsel, that they should continue deliberations.

Contrary to the majority's view, there was no mode of proceedings error because the record establishes that when the court received the jury's deadlock note on the previous afternoon, it complied with its core responsibilities under CPL 310.30 by (i) reading the note to defendant and counsel verbatim, (ii) affording counsel an opportunity to participate in formulating a response, (iii) advising defendant and counsel that the jury would have one more day to deliberate, possibly with another *Allen* charge, and (iv) instructing the jurors to cease deliberations until they reassembled the next day. Preservation is required under these circumstances, where counsel and defendant were apprised of the procedure the court intended to employ and, upon defendant's production the next morning, were immediately informed that the court had given a brief directive to the jury to resume deliberations. However, not only did defense counsel fail to raise an objection, he in fact agreed with the procedure employed by the court. Moreover, even if there was a mode of proceedings error, it was cured when, later in the day, the court, afer consulting with the parties, subsequently gave the *Allen* charge in defendant's presence, after which the jury reached its verdict.

Defendant allegedly sold 10 strips of Suboxone to an undercover police officer. His defense was that the police confused him with another man, who was arrested five minutes later for selling the same amount of Suboxone to the same undercover at the same location, and then lied about defendant to cover up their mistake.

On November 12, 2014, the jury began deliberating. On November 13, an *Allen* charge was given after the jury indicated varying degrees of deadlock. On November 17, the court took a partial verdict acquitting defendant of criminal sale of a controlled substance in the fourth and fifth degrees. Later that day, the court received another note stating: "We, the [j]ury, cannot come to an agreement on Charge 3 [the criminal possession count], 10 to 2." The court read the note on the record, in the presence of defendant and his counsel, and stated:

"It sounds to me like a deadlock. After concensus [sic] off the record between the parties, I'll probably end the day and have them come back Tuesday—tomorrow.

"In the interim, if you all work out an agreement or whatever, then I would probably give them another Allen charge. But not keep them beyond tomorrow. Is that all right?"

Defense counsel replied: "The first part sounds fine. Keeping them beyond tomorrow, if we have to make a record." The court responded that "[t]hey certainly had enough time to deliberate on this, all right. And if it looks like we'll go there. Anything else? Everybody agree?" Defense counsel answered, "Nothing from this side," and the People answered, "Yes." The jury then returned to the courtroom, at which time the court instructed them, in the presence of defendant:

"All right this is what I'm going to do . . . you guys look very tired . . . . We are going to quit for the day. I'm going to have you come back tomorrow . . . . I'll tell you what I'm going to do tomorrow and we'll proceed from there. But get a goodnight's sleep. You guys are pooped right now. I can understand why. So let's come back with some fresh minds and a fresh focus tomorrow.

"So deliberations must be conducted only in . . . the jury room . . . when all jurors are present. Therefore all deliberations must now cease. They must not be resumed until all 12 of you have returned and are together again [in] the jury room . . . .

"Let's hope we can do this tomorrow and we'll hope you come to some conclusion. So have a goodnight's sleep. Let's go with ten o'clock again so we can start fresh and a new day. . . ."

On the next morning, November 18, the jury returned at approximately 10:00 a.m., as instructed. Defendant was not produced until shortly before noon, at which time the court advised counsel, in defendant's presence: "All right, good morning. Almost—oh, actually good afternoon. Well, boy, all right, we had a long time getting [defendant] here. No absence on his part. But it is now after the noon. I told the jurors to continue deliberations so they wouldn't just be sitting back there, however, the [November 17] note did indicate [that the jury] cannot come to an agreement on charge 3, 10 to 2. So we can do it one or two ways. I can give them another Allen charge if that's what you wish or let them continue deliberating and wait for another note. Or if I do that I will do it just before lunchtime."

Defense counsel replied that he did not think another Allen charge would do much good. The court responded: "Okay. So then I'll let them continue deliberating. We'll wait for the note and the note comes fine." After a discussion off the record, the court stated, "I will give the Allen at about 12:30." Again, defense counsel did not object.

At or about 12:30 p.m., in the presence of defendant and counsel, the court referenced the jury's last note of November 17, and reread its *Allen* charge. At 3:24 p.m., the jury sent a note to the court stating that it had reached a verdict. Defendant moved to set aside the verdict pursuant to CPL 330.30 (1) and (2). In support of defendant's claim that the court "violated the mode of proceedings, and denied [his] rights to be present at all material stages of his trial," his counsel stated: "At no time, on or off the record, was counsel apprised of the decision to instruct the jury to continue to deliberate [on the morning of November 18], despite the deadlock note of the previous afternoon and the Court's statement at that time that 'I'll tell you what I'm going to do tomorrow morning and we'll proceed from there.' Defense counsel was in the courtroom all morning waiting for [defendant] to be produced. The jury was not brought out and told to continue deliberating on the record. [Defendant] was not even in the building. The defense contends that the jury was instructed to keep deliberating by a court officer at the direction of the Court itself, with no notice given to either party."

The court denied the motion, holding that it had abided by CPL 310.30 and had not relinquished its authority. In so ruling, the court found that the jurors had conducted themselves in accordance with the instructions provided to them at the end of the afternoon of November 17, including that they cease

deliberations for the day and not begin again until they were all together again on November 18, at which time available options would be considered. Furthermore, the parties, having been read the jury's note and given an opportunity to provide their input, had agreed to this procedure, and when the jurors reassembled on the 18th "they were escorted by a designated officer to their deliberation room."

When the court receives a substantive note from the jury, CPL 310.30 requires it to (i) provide counsel with "meaningful notice" of the contents of the note so that counsel may help frame the court's response, and (ii) provide a "meaningful response" to the jury (*People v Kisoon*, 8 NY3d 129, 134 [2007]; *see People v O'Rama*, 78 NY2d 270, 276-277 [1991]).

"[N]ot every departure from the *O'Rama* procedure, even in the context of a substantive jury inquiry, is a mode of proceedings error" (*People v Nealon*, 26 NY3d 152, 161 [2015]). In *People v Mack* (27 NY3d 534, 537 [2016]), the Court of Appeals held "that where counsel has meaningful notice of the content of a jury note and of the trial court's response, or lack thereof, to that note, the court's alleged violation of the meaningful response requirement does not constitute a mode of proceedings error, and counsel is required to preserve any claim of error for appellate review." The Court explained that mode of proceeding error designations are "reserved for the most fundamental flaws . . . [that] go to the essential validity of the process and [are] so fundamental that the entire trial is irreparably tainted" (*id.* at 541 [internal quotation marks omitted]), and that it had "generally refused to classify alleged errors as mode of proceedings errors in the jury note context when the record demonstrates that counsel had all the knowledge required to object, and a timely objection would have allowed the court to easily cure the claimed error" (*id.* at 542 [internal quotation marks and alteration omitted]).

The record establishes that counsel was provided with meaningful notice of the jury's November 17 deadlock note (*see O'Rama*, 78 NY2d at 277-278). The court read the note into the record verbatim in the presence of defendant and counsel, and afforded counsel an opportunity to provide input as to an appropriate response. Defendant and his counsel were aware of what the court's response would be based upon the court's statement that it would end deliberations for the day, and probably give them another *Allen* charge tomorrow "if [they] all work out an agreement or whatever," but that it would not keep the jury past that day. Accordingly, as counsel received meaningful notice, there was no mode of proceedings error and

preservation was required (*see People v Navarro*, 143 AD3d 522, 523 [1st Dept 2016] ["since it is undisputed that counsel had full notice of the jury note in question, there was no mode of proceedings error"]).

In finding a mode of proceedings error, the majority cites *People v Ciaccio* (47 NY2d 431, 436-437 [1979]), where the Court of Appeals stated that "the presence of the defendant and his counsel is constitutionally required whenever supplemental instructions are given, and failure to notify them is a fundamental error."

In *Ciaccio*, during deliberations, the court clerk made an unauthorized statement to the jurors, represented as a message from the Judge, which neither defendant nor his counsel knew of at the time (47 NY2d at 435-436). The Court of Appeals held that the ex parte communications by the clerk and the failure to notify the defendant or his counsel of such communication was a fundamental error, violating defendant's absolute right to be present with his counsel whenever his presence has a reasonably substantial relation to the fullness of his opportunity to defend against a criminal charge, which right is protected by the New York and United States Constitutions and by statute (*id.* at 436-437).

In contrast, here, on November 17, after reading the jury note on the record and discussing it with counsel, the court instructed the jury to quit for the day and to come back tomorrow and "we'll proceed from there." The court further instructed that deliberations must not resume until all 12 members returned to the jury room, and that the jurors should return at "ten o'clock again so we can start fresh and a new day." Implicit in these instructions, given in the presence of defendant and counsel, was the court's intention that the jurors would resume deliberations when they reassembled the next morning.* Consequently, at most, the trial court committed a de minimis violation of defendant's right to be present rather than a mode of proceedings error, when, in conformity with its prior instructions, which were given in the presence of counsel and defendant, it told the jury to continue deliberations when they reassembled the next morning on November 18 (*see People v Roman*, 88 NY2d 18, 26 [1996]; *People v Morales*, 80 NY2d 450, 457 n 2 [1992]).

The majority also cites *People v Mehmedi* (69 NY2d 759, 760 [1987]), where the Court of Appeals stated that "CPL 330.30

---

* Indeed, the notes of the court clerk for November 17 state "Jurors to Continue Deliberations @10am on 11/18 on Final Counts."

makes a defendant's right to be present during instructions to the jury absolute and unequivocal." In *Mehmedi*, the court consulted with counsel in framing its answer to a jury note, but proceeded to instruct the jury by sending in a written note, in the absence of defendant (*id.*). Here, given the instructions the jury received at the end of the previous day's proceedings, the court did not formulate its sole response to the jury's note in defendant's absence. Moreover, the court disclosed to defendant and counsel that it had instructed the jury "to continue deliberations so they wouldn't just be sitting back there" while the Department of Correction was attempting to produce defendant. This gave defense counsel the opportunity to propose a different course of action and suggest curative measures. However, rather than raising an objection, counsel stated that the jury should continue deliberations, as the court had instructed. "[C]ounsel's silence at a time when any error by the court could have been obviated by timely objection renders the claim unpreserved and unreviewable here" (*People v Starling*, 85 NY2d 509, 516 [1995]).

Furthermore, the court remedied the purported error when it waited until defendant was present before giving an *Allen* charge (*see People v Kadarko*, 14 NY3d 426, 429-430 [2010] ["Although the (trial) court's decision not to read the entire note until after the jury had resumed deliberations may have been error, it was not a mode of proceedings error and the court later corrected itself, without objection"]). The fact that the jury did not reach its verdict until several hours after the final *Allen* charge further evidences that it was not improperly swayed by the court's earlier noncoercive instruction to continue deliberations, and that any purported error was cured.