This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------

No. 133
The People &c.,
            Appellant,
        v.
Kenneth Nealon,
            Respondent.

Christopher Blira-Koessler, for appellant.
Kendra L. Hutchinson, for respondent.

FAHEY, J.:

On this appeal, we are asked to decide whether a trial
court commits a mode of proceedings error when the court fails to
discuss a substantive jury note with counsel outside the presence
of the jury, but reads the note into the record in the presence
of the parties, counsel, and the jury before providing a

- 1 -

response.  While that departure from the O'Rama procedure (see People v O'Rama, 78 NY2d 270, 277-278 [1991]) is generally error, our precedent compels the conclusion that it is not a mode of proceedings error, and the preservation rule therefore applies.

I.

In September 2007, defendant and an accomplice severely beat another man and stole his cell phones, cash, and other personal items.  Defendant was charged with robbery in the first degree, robbery in the second degree, assault in the second degree, and criminal possession of stolen property in the fifth degree.  Defendant proceeded to a jury trial in Supreme Court, Queens County.  During deliberations, the jury sent three notes to the court that concern us on this appeal.

The first note requested instruction on the "difference between robbery in the [first] degree and [second] degree."  The second note, sent five minutes later, requested reinstruction "on all [four] charges."  An off-the-record sidebar discussion was held before the court marked these notes as Court Exhibits 2 and 3.  The court then recalled the jury into the courtroom, and, in the presence of the parties, counsel, and the jury, read the notes verbatim into the record.  The court then provided legal instructions to the jury.  Defendant did not object, either to the court's procedure or to its responses to the jury.

The jury's third note stated: "Clarify if [first] count robbery in first degree includes assault and [second] count

robbery in second degree doesn't include assault.  Does the degree of injury count towards [first] or [second] degree?"  An off-the-record sidebar discussion was held before the court marked the note as Court Exhibit 4.  The court again recalled the jury into the courtroom and read the note into the record in the presence of the parties, counsel, and the jury.  The court then provided a response to the jury's inquiry, and after the foreperson stated that the court had answered the jury's question, the jury returned to deliberations.  Defendant again did not object, either to the court's procedure or to its response to the jury's note.

The next note sent by the jury stated that the jury had reached a verdict.  Defendant was found guilty as charged.

On appeal, the Appellate Division unanimously reversed the judgment (116 AD3d 886 [2d Dept 2014]), holding that "Supreme Court violated the procedure set forth in O'Rama by reading the contents of the jury note for the first time in front of the jury and immediately providing a response" (id. at 887).  The Court further held that because the record failed to demonstrate that the trial court complied with "its core responsibilities under CPL 310.30, a mode of proceedings error occurred requiring reversal . . . , despite defense counsel's failure to object to the Supreme Court's handling of the jury's notes" (id. at 888 [internal quotation marks omitted]).

A Judge of this Court granted the People leave to

appeal (23 NY3d 1065 [2014]).  We now reverse.

                              II.

          CPL 310.30 requires a trial court to provide "notice to both the people and counsel for the defendant" of a substantive jury inquiry.  In O'Rama, we held that the statute requires the court's notice to counsel to be "meaningful," and we clarified that this "means notice of the actual specific content of the jurors' request" (O'Rama, 78 NY2d at 277).  This is because "counsel cannot participate effectively or adequately protect the defendant's rights if this specific information is not given" (id.).  We further held that, "in most cases," meaningful notice is best satisfied by adhering to the procedure outlined in United States v Ronder (639 F2d 931, 934 [2d Cir 1981]), which procedure is now commonly known as the O'Rama procedure:

> "Under this procedure, jurors' inquiries must generally be submitted in writing, since . . . written communications are the surest method for affording the court and counsel an adequate opportunity to confer. Further, whenever a substantive written jury communication is received by the Judge, it should be marked as a court exhibit and, before the jury is recalled to the courtroom, read into the record in the presence of counsel. Such a step would ensure a clear and complete record, thereby facilitating adequate and fair appellate review. After the contents of the inquiry are placed on the record, counsel should be afforded a full opportunity to suggest appropriate responses. As the court noted in Ronder (supra, at 934), the trial court should ordinarily apprise counsel of the substance of the responsive instruction it intends to give so that counsel can seek whatever modifications are deemed appropriate *before* the jury is exposed

to the potentially harmful information.
Finally, when the jury is returned to the
courtroom, the communication should be read
in open court so that the individual jurors
can correct any inaccuracies in the
transcription of the inquiry and, in cases
where the communication was sent by an
individual juror, the rest of the jury panel
can appreciate the purpose of the court's
response and the context in which it is being
made" (O'Rama, 78 NY2d at 277-278).

We made clear in O'Rama that a trial court does not

satisfy its responsibility to provide counsel with meaningful

notice of a substantive jury inquiry by summarizing the substance

of the note (see id. at 275, 278-279). We held that "[a] court

can neither serve the goal of maximizing counsel's participation

nor satisfy the CPL 310.30 requirement that meaningful notice be

given when counsel is not afforded a verbatim account of a

juror's communication" (id. at 279). Inasmuch as the trial

court's "error in failing to disclose the contents of the note

had the effect of entirely preventing defense counsel from

participating meaningfully in this critical stage of the

trial[,]" we held that the failure to provide meaningful notice

to counsel was a mode of proceedings error (id.).

Since O'Rama was decided, we have continued to hold

that when a trial court paraphrases a jury note or omits a key

term, thereby failing to provide counsel with meaningful notice

of the precise content of a substantive juror inquiry, a mode of

proceedings error occurs, and reversal is therefore required even

in the absence of an objection (see People v Walston, 23 NY3d

986, 990 [2014]; People v Tabb, 13 NY3d 852, 853 [2009]; People v
Kisoon, 8 NY3d 129, 135 [2007]).  This rule is sensible because
counsel cannot be expected to object to the court's response to
the jury or to frame an intelligent suggested response if counsel
lacks knowledge of the specific content of a substantive jury
note.  In other words, a trial court's "failure to read [a] note
verbatim deprive[s] counsel of the opportunity to accurately
analyze the jury's deliberations and frame intelligent
suggestions for the court's response" (Kisoon, 8 NY3d at 135).
Thus, "[w]here the record fails to show that defense counsel was
apprised of the specific, substantive contents of the note . . .
preservation is not required" (Walston, 23 NY3d at 990).

Here, by contrast, defendant does not dispute that his
trial counsel was "apprised of the specific, substantive contents
of the note[s]," inasmuch as the court read the precise contents
of the notes into the record in the presence of counsel and the
jury before responding to the jury (id.).  Nevertheless, the
trial court deviated from the O'Rama procedure by failing to
first read the note into the record in the presence of counsel
and to provide counsel with "a full opportunity to suggest
appropriate responses" outside the presence of the jury (O'Rama,
78 NY2d at 277-278).  Although off-the-record sidebar discussions
were held before the court recalled the jury, "we cannot assume
that [an O'Rama error] was remedied at an off-the-record
conference" (Walston, 23 NY3d at 990).  We therefore assume for

purposes of this appeal that no discussion of the jury's notes occurred between the court and counsel before the court recalled the jury into the courtroom.

We have repeatedly cautioned, however, that our decision in O'Rama "was not designed 'to mandate adherence to a rigid set of procedures, but rather to delineate a set of guidelines calculated to maximize participation by counsel at a time when counsel's input is most meaningful' " (People v Silva, 24 NY3d 294, 299 [2014], rearg denied 24 NY3d 1216 [2015], quoting People v Alcide, 21 NY3d 687, 692 [2013]).  As such, we have recognized that "some departures from the procedures outlined in O'Rama may be subject to rules of preservation" (Kisoon, 8 NY3d at 135; see Silva, 24 NY3d at 299; Walston, 23 NY3d at 989).

The issue on this appeal is not whether the trial court deviated from the O'Rama procedure.  Rather, the issue is whether this particular deviation from the O'Rama procedure -- the trial court's failure to have a discussion with counsel about the content of the notes and the court's intended response before recalling the jury into the courtroom and providing a response -- falls within the "tightly circumscribed class" of errors known as mode of proceedings errors, which are not subject to the preservation requirement (People v Kelly, 5 NY3d 116, 119-120 [2005]).  Our precedent compels the conclusion that this particular deviation from the O'Rama procedure was not a mode of

proceedings error, and that counsel was required to object to
preserve any claim of error for appellate review.

### III.

Our analysis begins with People v Starling (85 NY2d 509
[1995]). In Starling, defense counsel requested certain jury
instructions during the charge conference pertaining to intent,
which requests the trial court denied (see id. at 513). During
deliberations, the jury sent out two notes requesting further
legal instruction on the definition of intent (see id. at 514).
"On both occasions, the court read the note verbatim in the
presence of the jury, counsel and defendant and proceeded to
reread the same definition of intent it had previously given"
(id.). Thus, the court committed the same departure from O'Rama
that is at issue here: the court did not discuss the notes or its
intended response with counsel before recalling the jury. In
Starling, as is the case here, defendant did not object, either
"to the manner of proceeding or to the substance of the court's
responses" (id.).

On appeal, this Court upheld the judgment of
conviction, concluding that

> "[b]ecause the court read the entire content
> of the jury's notes in open court prior to
> responding, this case is distinguishable from
> the situation presented in [O'Rama], where
> the trial court withheld from counsel the
> contents of a juror's note, thereby depriving
> defendant of the opportunity to participate
> in formulating the court's response" (id. at
> 516).

We noted that "defense counsel was given notice of the contents
of the jury notes and had knowledge of the substance of the
court's intended response -- a verbatim rereading of the intent
charge previously given on several occasions" (id.).  We
therefore held that "counsel's silence at a time when any error
by the court could have been obviated by timely objection renders
the claim unpreserved and unreviewable" by this Court (id.).

        More recently, the Court decided People v Ramirez (15
NY3d 824 [2010]).  In a brief memorandum decision, we wrote that
"although the record is silent as to whether Supreme Court showed
the jury note to counsel as required in [O'Rama], defense counsel
had notice of the contents of the note and the court's response,
and failed to object at that time, when the error could have been
cured" (id. at 825-826).  Citing Starling, we therefore held that
defendant's claim was "unpreserved for review" (id. at 826, also
citing People v Kadarko, 14 NY3d 426, 429-430 [2010]).

        We reiterated this holding in People v Williams (21
NY3d 932 [2013]).  In that case, as in this one, the jury sent a
note requesting "clarification of a legal term, and after asking
the jury to return to the courtroom, the court read the note out
loud before responding directly to the jury" (id. at 934).  On
appeal, we rejected the defendant's claim "that a mode of
proceedings error occurred, when the trial court did not comply
precisely with the requirements of [O'Rama]" (id. at 934-935).
Rather, citing Ramirez and Starling, we held that "[w]here, as

here, defense counsel had notice of a jury note and failed to object . . . when the error could have been cured, lack of preservation bars the claim" (id. at 935 [internal quotation marks omitted], also citing People v Ippolito, 20 NY3d 615 [2013]).

A few months later, we decided People v Alcide (21 NY3d 687 [2013]). In that case, the jury requested readbacks of the testimony of the first officer to arrive at the crime scene and a bystander who witnessed the shooting (see id. at 690).

> "In the presence of defendant, counsel and the jury, the judge stated that he had received 'notes requesting the reading of the testimony of the first officer at the crime scene. That will be Court Exhibit 3. And the reading of [the bystander's] testimony, which will be Court Exhibit 4' " (id. at 691).

The judge then explained that during the readbacks, he would read the direct examination questions and the court reporter would read the witness's responses, and he would then reverse that procedure for the cross-examination testimony (see id.). "Neither party objected to this procedure for handling the readbacks" (id.).

On appeal, we rejected the defendant's claim that a mode of proceedings error had occurred because the court failed to provide counsel with meaningful notice (see id. at 691-694). We held that Starling controlled, inasmuch as the two jury notes "were disclosed in their entirety in open court before the trial judge responded to them" (id. at 694). We further noted that

"the judge explained exactly how he was going to conduct the readbacks" (id.). Citing Ramirez, we held that "[i]f defense counsel considered the judge's intended approach prejudicial, he certainly had an opportunity to ask him to alter course, and it behooved him to do so" (id.).

These four cases are controlling here. In the present case, the trial court similarly departed from the O'Rama procedure by failing to have a discussion with counsel about the notes before recalling the jury into the courtroom, thereby depriving counsel of an opportunity to hear the precise contents of the notes and to suggest responses outside the presence of the jury. Nevertheless, as was the case in Starling, Ramirez, Williams, and Alcide, the trial court here read the precise contents of the notes into the record in open court in the presence of counsel, defendant, and the jury before providing its response. Defense counsel here similarly failed to object, either to the trial court's procedure or to the court's responses to the jury.

By reading the notes verbatim into the record in the presence of counsel and the jury, the trial court complied with its core responsibility to give counsel meaningful notice of the jury's notes (see Alcide, 21 NY3d at 694; Williams, 21 NY3d at 934-935; Ramirez, 15 NY3d at 825-826; Starling, 85 NY2d at 516). Thus, no mode of proceedings error occurred, and counsel was required to object in order to preserve a claim of error for

appellate review.  "Where, as here, defense counsel had notice of
a jury note and 'failed to object . . . when the error could have
been cured,' lack of preservation bars the claim" (Williams, 21
NY3d at 935, quoting Ramirez, 15 NY3d at 826).[1]

To the extent defendant contends that these four cases
are distinguishable because the jury notes at issue there merely
required a ministerial response, we disagree.  The O'Rama
procedure is implicated whenever the court receives "a
substantive written jury communication" (O'Rama, 78 NY2d at 277
[emphasis added]).  Conversely, the O'Rama procedure is not
implicated when the jury's request is ministerial in nature and

---

[1]    The rule advocated by the dissent is that where the
trial court's impending response to a substantive jury note can
be characterized as predictable, an objection is required to
preserve any error for appellate review, inasmuch as counsel's
participation in the formulation of a predictable response is
superfluous.  Where, however, the court's impending response
cannot be characterized as predictable or obvious, the dissent
would hold that this particular departure from the O'Rama
procedure is a mode of proceedings error and no objection is
required.  This appears to be unworkable.
     The dissent asserts that these four cases are
distinguishable because, in each case, "counsel knew what the
court's response would be and it was objectively evident that,
although the inquiries were substantive, the responsive options
were so limited as to render counsel's participation in
addressing them minimally useful" (dissenting op, at 8).  While
that characterization may be accurate in Starling and Alcide, we
respectfully disagree that the predictability of the court's
response is the common thread in all four cases.  Rather, as we
read these four cases, the common thread is that "the court
read[] the 'entire content' of the note verbatim in open court
prior to responding to the jury," and thus the departure from the
O'Rama procedure was "subject to our rules of preservation"
(Walston, 23 NY3d at 989).

therefore requires only a ministerial response (see People v

Mays, 20 NY3d 969, 971 [2012]; People v Ochoa, 14 NY3d 180, 188

[2010]).  Nevertheless, we did not characterize the jury notes at

issue in Starling, Ramirez, Williams, or Alcide as ministerial,

and therefore our analysis did not turn on any distinction

between substantive and ministerial jury requests.  Indeed, in

Williams, the jury requested "clarification of a legal term"

(Williams, 21 NY3d at 934), a request that cannot be

characterized as a ministerial inquiry for which the trial court

had no obligation to comply with the O'Rama procedure.

        Rather, the holding to be distilled from these four

cases is that not every departure from the O'Rama procedure, even

in the context of a substantive jury inquiry, is a mode of

proceedings error.  Where, as here, counsel has meaningful notice

of a substantive jury note because the court has read the precise

content of the note into the record in the presence of counsel,

defendant, and the jury, the court's failure to discuss the note

with counsel before recalling the jury is not a mode of

proceedings error.  Counsel is required to object to the court's

procedure to preserve any such error for appellate review.  We

note that our understanding of this line of cases as set forth

herein is consistent with Walston, where we stated: "We have

acknowledged that some departures from O'Rama procedures are

subject to our rules of preservation, such as where the court

reads the entire content of the note verbatim in open court prior

to responding to the jury" (<u>Walston</u>, 23 NY3d at 989 [emphasis
added] [internal quotation marks omitted]).

                              IV.

          Our jurisprudence seeks to ensure that all parties are
on notice as to what the jury is asking.  Without meaningful
notice of the contents of a jury note, counsel cannot protect the
interests of each party before the court.  What to do with this
knowledge is a decision for counsel to make.

          In this and similar scenarios, counsel has knowledge of
three key facts: (1) the precise content of the jury's note,
which was read verbatim into the record in the presence of
counsel and the jury; (2) that counsel has not had an opportunity
to provide the court with input on its response to the jury's
inquiry; and (3) the actual content of the court's response to
the jury, which counsel is hearing in open court as the court
provides its response to the jury.  Counsel therefore has all the
knowledge required to make an objection, either to the court's
deviation from the <u>O'Rama</u> procedure or to the court's response to
the jury, or both.

          If we held this particular departure from <u>O'Rama</u> to be
a mode of proceedings error, however, it would be unwise for
counsel to object and seek correction of the error, inasmuch as
in the absence of a correction of the error on the record, the
defendant would automatically receive an appellate reversal and a
new trial.  Recognizing a mode of proceedings error in this

situation would have precisely the opposite effect from what this Court intended in O'Rama: "to maximize participation by counsel" (O'Rama, 78 NY2d at 278).

We disagree with defendant that requiring counsel to object to this particular deviation from the O'Rama procedure imposes an unreasonable burden on counsel due to the pressures of the situation and the risk that counsel will draw the ire of the court or the jury. While we do not discount the difficulty of raising a timely objection while under the pressures that a jury trial entails, the preservation rule requires no less (see Alcide, 21 NY3d at 696).

"[T]hough it hardly needs restating, we underscore the desirability of adherence to the procedures outlined in O'Rama" (Kisoon, 8 NY3d at 135). The O'Rama procedure was designed to "maximize participation by counsel at a time when counsel's input is most meaningful, i.e., before the court gives its formal response" (O'Rama, 78 NY2d at 278). Indeed, if counsel here had objected to the court's deviation from the O'Rama procedure or had sought an opportunity to provide input outside the presence of the jury, and the court had refused, the court's refusal would be error (see People v Cook, 85 NY2d 928, 930-931 [1995]). We merely reiterate, consistent with our precedent, that this particular deviation from the O'Rama procedure is not part of the narrow class of mode of proceedings errors for which preservation is not required.

In light of our holding that no mode of proceedings error has occurred on the face of this record, we do not address the People's alternative contention that the Appellate Division erred in refusing to consider the resettled record.

Accordingly, the order of the Appellate Division should be reversed and the case remitted to the Appellate Division for consideration of the facts and issues raised but not determined on the appeal to that court.

People v Kenneth Nealon

No. 133

LIPPMAN, Chief Judge (dissenting):

A deliberating jury's request for supplemental instruction or information we have often observed may well mark a trial's turning point (see e.g. People v Kisoon, 8 NY3d 129, 134-135 [2007]; People v Ciaccio, 47 NY2d 431, 436 [1979]). For this reason, the law, both statutory and judge-made, places upon trial courts in receipt of post-submission jury inquiries of a substantive sort, special nonwaivable responsibilities in default of which an ensuing conviction will in this State, without more, be rendered infirm: the court must respond to the jury meaningfully, and preparatory to doing so must take steps to assure that the response given is the product of a process in which the defendant has had a full opportunity to participate with the assistance of counsel (CPL 310.30; People v O'Rama, 78 NY2d 270, 279-280 [1991]; and see People v Silva, 24 NY3d 294, 299 [2014]; People v Alcide, 21 NY3d 687, 692 [2013]). This appeal asks what process is minimally adequate to satisfy the latter, constitutionally grounded (see United States v Robinson, 560 F2d 507 [1977] [en banc], cert denied 435 US 905 [1978]; People v Ciaccio, 47 NY2d at 436) requirement.

The majority has responded, purportedly under the

- 1 -

- 2 -                                          No. 133

compulsion of this Court's precedents, that a court discharges its "core" obligation to afford a defendant and his or her attorney meaningful notice of a substantive jury inquiry simply by reading the note verbatim in open court with the parties, counsel and the jury present.  And, it is true that there are cases in which we have held that that is enough.  But we have never, until today, said that it is always enough.  That development is, in my view, a major and imprudent step, not only uncompelled by, but significantly at odds with our jurisprudence, which has, at least since our 1991 decision in People v O'Rama (78 NY2d 270) been rooted in the principle that the notice of a substantive jury inquiry mandated by CPL 310.30 must, even if not given in strict accordance with a prescribed protocol, be notice "calculated to maximize participation by counsel at a time when counsel's input is most meaningful, i.e., before the court gives its formal response" (O'Rama, 78 NY2d at 278 [emphasis supplied]).

The majority's assertion that the O'Rama "goal of maximizing counsel's participation" (id. at 278) will invariably be met by the trial court's reading of the note in open court just prior to delivering its response, since the defendant and his attorney will at the instant of audition have "all the knowledge required to make an objection," (majority opinion at 14) betrays a serious misconception of what maximal participation by counsel entails at this uniquely crucial juncture of a

criminal trial.  The core obligation recognized by O'Rama is not that of enabling an objection, but of enabling counsel's full substantive participation, and to that end O'Rama prescribed not a one, but a four-step protocol to assure, without the need for an objection in the presence of the jury, counsel's inclusion in the process of shaping a meaningful response to the jury's query.

The procedure generally required by O'Rama was not a random, overwrought product of judicial imagination run amok, but one that long experience had shown to be ordinarily essential to the honor of a defendant's basic rights of presence, participation and representation at material stages of the trial; the identical procedure had been prescribed a decade before in United States v Ronder (639 F2d 931, 934 [2d Cir 1981]) as the "proper practice" to satisfy settled law that "messages from a jury should be disclosed to counsel and that counsel should be afforded an opportunity to be heard before the trial judge responds" (id.).  Integral to that "proper practice" is compliance with the instruction that the initial disclosure to counsel of the jury's inquiry should take place out of the jury's presence, after which, and still without the presence of the jury, "counsel should be afforded a full opportunity to suggest appropriate responses" (O'Rama, 78 NY2d at 278).  And, O'Rama is clear that, ordinarily "a full opportunity to suggest appropriate responses" is not afforded unless "the trial court . . . apprise[s] counsel of the substance of the responsive instruction

it intends to give so that counsel can seek whatever modifications are deemed appropriate <u>before</u> the jury is exposed to the potentially harmful information" (<u>id.</u> [in original]). There is nothing in <u>O'Rama</u> to suggest, as the majority now posits, that these parts of the prescribed procedure are generally inessential to the satisfaction of the trial court's "core" notice obligation. Were they utterly dispensable to the satisfaction of that duty, the court would not have troubled to prescribe them.

It is true that <u>O'Rama</u> recognized that strict adherence to its notice protocol might not always be practicable or advisable and accordingly that trial courts possessed discretion to employ modified procedures "equally conducive to participation by defense counsel" (<u>id.</u> at 278). But this dispensation was made available only where such a departure was supported by "unique articulable circumstances" (<u>id.</u>). The majority fails to identify any "unique articulable circumstances" to support the presently challenged departure, and it is obvious that the truncated procedure employed by the trial court was not "equally conducive to participation by defense counsel" as the one prescribed in <u>O'Rama</u>.

The majority defends its dramatic paring of the <u>O'Rama</u>'s core notice obligation by positing that, of the steps in the notice protocol, only the reading of the note to counsel is essential to counsel's participation, at least to the extent of

lodging an objection.  But if all that was required to discharge the notice obligation imposed by CPL 310.30 and O'Rama was objection-enabling disclosure, O'Rama itself would have been decided differently, as would Kisoon and its companion case People v Martin (8 NY3d 129 [2007]).  In each of those cases, counsel knew that there was a jury note the full text of which had not been disclosed and could have objected to the non-disclosure of the note's full content (see O'Rama, 78 NY2d at 275; Kisoon, 8 NY3d at 132; Martin, 8 NY3d at 133).  What these cases tell us, then, is that objection-enabling notice is not enough to meet the trial court's core notice obligation when presented with a post-submission substantive jury inquiry.  While counsel may be better able to frame an objection once he or she has heard a jury note read aloud, if counsel hears the note for the first time when the note is read to the jury and directly before the court's intended response, as was the case here, realistically all counsel is being offered is the opportunity to object in front of the jury, not to participate fully and substantively.  Contrary to what appears to be the majority's basic premise, the relevant core objective of O'Rama is not to assure that counsel will be able to object, practically on the spur of the moment, to a court's imminent delivery of a supplemental jury instruction, the content and wording of which are as yet undisclosed, but to obviate the need for such a blind objection -- particularly one in front of the jury seeming to

telegraph the defendant's view that what the court is about to say may well be unfavorable to his case -- by affording defense counsel, as a matter of essential non-waivable process, notice "calculated to maximize [his or her] participation" on the client's behalf at what may well be the tipping point of the trial.  The pertinent question, then, in assessing whether there has been an O'Rama mode of proceedings violation is precisely not whether counsel has had the opportunity to object, but whether counsel, without having had to object, has been afforded notice of the jury query designed to maximize his opportunity to propose and advocate on the record for, a responsive instruction at once appropriate and minimally if at all prejudicial to his client's prospects for a favorable verdict.

Conceptually, of course, whether an error is deemed to compromise the basic structure of a trial and thus to qualify as one affecting the mode of proceedings cannot depend upon whether it involves a deviation as to which an objection is capable of being made.  Mode of proceedings errors are by reason of their fundamental incompatibility with essential process non-waivable (see People v Patterson, 39 NY2d 288, 295 [1976]).  Neither the gravity of such error nor the consequently primary judicial obligation to avoid its commission is logically diminished or relieved by reason of the circumstance that a defendant is able to, but does not contemporaneously, protest its occurrence.

None of the cases upon which the majority relies is

properly cited for the broad contrary proposition that a trial court's core CPL 310.30 mode of proceedings notice obligation is necessarily discharged simply by reading a jury note aloud so as to enable an objection. In People v Starling (85 NY2d 509 [1995]), we held that there was no mode of proceedings error where "defense counsel was given notice of the contents of the jury notes and had knowledge of the substance of the court's intended response--a verbatim rereading of the intent charge previously given on several occasions" (id. at 516 [emphasis supplied]). In People v Ramirez (15 NY3d 824 [2010]) as well, the conclusion that there had been no mode of proceedings error rested upon the circumstance that "defense counsel had notice of the contents of the note and the court's response" (id. at 825-826 [emphasis supplied]). Similarly, in People v Williams (21 NY3d 932 [2013]), because it was objectively evident that the court would respond to the jury's note requesting clarification of a legal term by simply reading back the portion of the previously conferenced charge defining the term, the court's single reading of the note, in open court, to defense counsel and the jury, while involving an elision of the procedure outlined in O'Rama, was deemed sufficient to satisfy the statutory notice requirement and thus to remove the departure from the mode of proceedings rubric. And, in the last of the cases upon which the majority primarily relies, People v Alcide (21 NY3d 687 [2013]), all that was requested by the jury were specified readbacks and,

as we noted, "the judge explained exactly how he was going to conduct the readbacks" (id. at 694).

These cases presented situations in which counsel knew what the court's response would be and it was objectively evident that, although the inquiries were substantive, the responsive options were so limited as to render counsel's participation in addressing them minimally useful.[1]  This case is different.  It is not one in which the jury requested a simple readback of a clearly specified portion of the trial record or of a previously conferenced charge, or one in which it was otherwise obvious in advance of the court's response what that response would be. Nor, more importantly, was it a case in which the court's response was so dictated in style and substance by the jury's inquiry as to render counsel's participation in its formulation practically superfluous.  Here, the jury notes seeking, among other things, clarification of the difference between first and second degree robbery and of whether the degree of injury "counted towards first or second degree" (the jury note did not

---

[1]The majority insists that this sentence reflects a proposed "rule" which it then attempts to state with great specificity (majority opinion, n 1).  To the extent that any rule is adverted to, however, it is that stated in O'Rama, namely, that where there are articulable circumstances to justify a deviation from the prescribed protocol and the deviation does not under the circumstances operate to abridge counsel's opportunity to participate maximally, the departure will not stand in the way of concluding that the court met its core notice obligation (78 NY2d at 278).  There is nothing unworkable about this rule; it is the rule that the Court has, until today, applied.

specify whether this reference was to robbery or assault or both) necessarily involved the court in an ambiguously framed discussion of substantive law that might have been approached and accomplished in numerous ways, some more benign to defendant than others.  Especially given the lack of clarity in the jury's request, counsel's participation in the process of honing a meaningful response was not evidently superfluous and likely would have resulted in an instruction less muddled, incorrect and potentially prejudicial than the one the trial court extemporized on its own.  Because the court, without articulable justification, departed from the O'Rama notice protocol, and in so doing failed to employ a procedure equally conducive to maximizing counsel's opportunity to participate in the formulation of the supplemental jury instruction -- relegating counsel instead to a fleeting Hobson's choice between not participating at all and lodging an open court objection to the giving of a yet undisclosed supplemental charge about which no substantive critique could then have been made -- it is plain that O'Rama's core mandate of meaningful notice was not met.  Certainly, this was not notice "calculated to maximize participation by counsel" (O'Rama, 78 NY2d at 278).

The majority expresses trepidation that treating the present species of O'Rama departure as a mode of proceedings error would not in the end maximize, but create a disincentive to participation by defense counsel, since freed by the mode of

proceedings doctrine from the need to object in order to preserve an O'Rama claim for appellate review, counsel could and would sit silently and allow the court to err so as to assure a reversal on appeal in the event of a conviction.  But apart from the lack of any empirical basis for the prediction that defense counsel generally would elect not to zealously represent their clients at trial in order to bank an appellate reversal years down the line, the majority's concern demonstrates a confusion over whose conduct the mode of proceedings doctrine is intended to regulate. It is not counsel's conduct that is the primary concern of the doctrine, but the court's.  The doctrine recognizes that it is the court, not counsel, that is best situated to assure that the correct procedure is followed when a note requesting instruction issues from a deliberating jury, and that when the Court discharges its core obligations there will be no opportunity for gamesmanship of the sort feared.

The most effective way of both eliminating gamesmanship from, and assuring the full participation of counsel in, the critical phase of the trial initiated by a substantive post-submission jury inquiry, is for appellate courts generally to demand scrupulous adherence to the not overly complex mode of proceeding prescribed in O'Rama.  To the extent that we narrow the application of the mode of proceeding doctrine in this context, experience teaches that the price will be the toleration of a very serious species of error typically situated at the crux

of a criminal trial -- error which will predictably flourish in the ample shade of the preservation and harmless error doctrines. As the Appellate Division evidently understood, a dominant concern of this Court for the last 25 years has been to avoid such a degradation of essential process.  Today's decisions, resting on a fairly obvious overreading of four fact-sensitive decisions to express a severe limitation of appellate oversight of the process following from a trial court's receipt of a substantive jury inquiry, lose sight of, and break with that jurisprudential context.  And although the result of doing so in these cases may seem satisfying, there is good reason to fear that longitudinally this modern approach will not enhance, but impair the quality of the adversary process and the reliability of its outcome.  For these reasons I dissent and would affirm the order of the Appellate Division.

* * * * * * * * * * * * * * * * *

Order reversed and case remitted to the Appellate Division, Second Department, for consideration of the facts and issues raised but not determined on the appeal to that court.  Opinion by Judge Fahey.  Judges Pigott, Abdus-Salaam and Stein concur. Chief Judge Lippman dissents and votes to affirm in an opinion in which Judge Rivera concurs.


Decided October 27, 2015