# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 60  SSM 6
The People &c.,
      Respondent,
   v.
Vincent Meyers,
      Appellant.

Submitted by Patrick Michael Megaro, for appellant.
Submitted by Pamela Kelly-Pincus, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed. While preparing defendant's appeal, counsel discovered a purported jury note, marked as Court Exhibit XIV, in the court file maintained by the County Clerk. Significant ambiguity existed in

- 1 -

the record concerning the circumstances in which the exhibit was marked and entered into the court file, including ambiguity as to whether the jury sent the exhibit to the court or, instead, began drafting it but discarded it in favor of sending other, substantially similar notes. The purported note was sequentially marked after the jury note stating that the jury had reached a verdict and was duplicative of other jury notes undisputedly received and read into the record by the court. Further, no other reference to the exhibit existed on the record or in the court file. The Appellate Division directed Supreme Court to conduct a reconstruction hearing to clarify whether Exhibit XIV was, in fact, a jury note requesting further information or instruction from the court pursuant to CPL 310.30. After the hearing, the trial court concluded that Exhibit XIV was a draft or derelict note that was discarded by the jury and never submitted to the court.

We recently held that where the record does not establish that counsel was provided meaningful notice of the contents of a substantive jury note, "the sole remedy is reversal and a new trial," not a reconstruction hearing (People v Parker, 32 NY3d 49, 62 [2018]). However, the purpose of the reconstruction hearing at issue here was not to determine whether the court complied with the counsel notice requirements of CPL 310.30 and People v O'Rama (78 NY2d 270, 276 [1991]). Instead, the hearing was to determine whether, in the first instance, Exhibit XIV reflected a "jury . . . request [to] the court for further instruction or information" (CPL 310.30) such that those obligations were triggered. Moreover, the finding of the courts below, following the reconstruction hearing, that Exhibit XIV was a draft note that the jury discarded is supported by the record and, thus,

beyond our further review.  Finally, defendant failed to demonstrate that he was denied effective assistance of counsel.

People v Vincent Meyers

SSM No. 6

GARCIA, J. (concurring in result):

Less than a year ago, in People v Parker, we held that, in the absence of affirmative record proof that the trial court provided a verbatim account of every jury note, "the sole remedy is reversal and a new trial" (32 NY3d 49, 62 [2018] [emphasis added]). No matter

how strongly the record suggested that defense counsel was, in fact, given meaningful notice of each note, reconstruction of the record is not permitted to ascertain the existence—or nonexistence—of error. Reversal, and only reversal, must result. That was our short-lived <u>Parker</u> rule.

Here, as in <u>Parker</u>, defendant asserted that the trial court failed to satisfy its meaningful notice requirement after defense counsel discovered a jury note that was never mentioned at trial. But unlike in <u>Parker</u>, the Appellate Division directed Supreme Court to conduct a hearing to "assess all the circumstances" regarding the inquiry (<u>People v Meyers</u>, 148 AD3d 1057, 1057 [2d Dept 2017]). Supreme Court then held a reconstruction hearing, where a number of witnesses testified: two jurors, the court clerk, the judge's law secretary, defendant's trial counsel, and the trial prosecutor. Following that hearing, Supreme Court concluded that the inquiry was "a derelict note discarded by the jury," and therefore no error had occurred. The Appellate Division affirmed (162 AD3d 1074 [2d Dept 2018]).

With that knowledge now in hand, <u>Parker</u>'s application would yield an absurd result: automatic reversal of defendant's convictions because of a jury note that was not properly read into the record, even though we now know—although we should not know (<u>Parker</u>, 32 NY3d at 62)—that it was not a jury note at all. Though I agree that we should avoid that senseless outcome, I do not agree that <u>Parker</u>'s per se reversal rule is somehow inapplicable. The trouble with <u>Parker</u>'s application stems not from the facts of this case; it stems from <u>Parker</u> itself.

## I.

The Court's dilemma in this case is a familiar one. In People v O'Rama, the Court first applied the "mode of proceedings" exception to cases involving deviations from CPL 310.30's jury note procedure (78 NY2d 270, 279 [1991]). Until then, the mode of proceedings doctrine had comprised a "very narrow" exception to our preservation rule (People v Patterson, 39 NY2d 288, 295 [1976]) that was reserved for "the most fundamental of flaws" (People v Becoats, 17 NY3d 643, 651 [2011]). Because mode of proceedings errors carry extreme and mandatory consequences—immunity from the rules governing preservation, waiver, and harmless error—the doctrine had historically been confined to a "tightly circumscribed class" of cases (People v Kelly, 5 NY3d 116, 120 [2005]). In a single sentence of dicta, the O'Rama Court changed that.

The results were harsh and widespread. Applying O'Rama, the Appellate Divisions began reversing convictions based on unpreserved claims in any case where the record failed to show adequate compliance with CPL 310.30. Countless reversals resulted (see People v Morrison, 32 NY3d 951, 960-962 [2018] [Garcia, J. dissenting] [collecting cases]). Meanwhile, O'Rama faced sharp criticism for its "cursory rational" that "d[id] not seem very persuasive" (People v Walston, 23 NY3d 986, 991 [2014] [Smith, J., concurring]).

Facing this backlash, the Court began to scale back O'Rama's sweeping rule. In People v Nealon, for instance, we held that preservation was required where the trial court provided notice of the contents of a jury note, but failed to consult defense counsel before

responding to the jury's inquiry (26 NY3d 152, 160-162 [2016]).  Similarly, in People v Mack, we rejected the defendant's claim that a mode of proceedings error had occurred where defense counsel had meaningful notice of the jury's inquiries, but the trial court accepted the jury's verdict without first providing a response (27 NY3d 534, 537 [2016]).  In both Nealon and Mack, we held that a defendant is required to preserve his claim of error where "the trial court fails to provide a meaningful response to a substantive jury note but satisfies its meaningful notice obligations" (Mack, 27 NY3d at 539; Nealon, 26 NY3d at 160-161).  Although meaningful notice and a meaningful response had each been deemed a "core responsibility" under O'Rama, the Court began treating the errors quite differently—one required preservation, while the other did not.

Those decisions were harshly criticized for skirting O'Rama's mandate.  The dissenters in both cases lamented the Court's unprincipled and haphazard abandonment of one of O'Rama's two core tenets (see Mack, 27 NY3d at 545-547 [Rivera, J., dissenting]; Nealon, 26 NY3d at 164 [Lippman, Ch. J., dissenting]).  Indeed, not long before, this Court had reinforced that "[a] court's failure to supply a meaningful notice _or_ response constitutes error affecting the mode of proceedings, and therefore presents a question of law for appellate review even in the absence of timely objection" (People v Alcide, 21 NY3d 687, 692 [2013] [emphasis added]; see also People v Taylor, 26 NY3d 217, 228 [2015] [Rivera, J., concurring] [noting that the trial court's "failure to fulfill these responsibilities constitutes a mode of proceedings error which does not require preservation"]).  Following our lead, the Appellate Divisions were, prior to Nealon and Mack, consistently excusing

preservation failures wherever the trial record did not demonstrate compliance with either of the court's two duties: the duty to provide meaningful notice of a jury note, or the duty to respond (see Mack, 117 AD3d 1450, 1451 [1st Dept 2014]; Nealon, 116 AD3d 886, 887 [2d Dept 2014]; see also People v McGuire, 101 AD3d 1386 [3d Dept 2012]; People v Lockley, 84 AD3d 836 [2d Dept 2011]).  In Nealon and Mack, however, we sharply reversed course.

Compounding the confusion, the Court based its new dichotomy on the notion that, where the trial court complies with its meaningful notice requirement, defense counsel is equipped with "all the knowledge required to make an objection," and thus preservation is required (Nealon, 26 NY3d at 162).  But meaningful notice, we maintained, required far more than "objection-enabling" notice of the error (id. at 166 [Lippman, Ch. J., dissenting] [noting that "objection-enabling notice is not enough to meet the trial court's notice obligation"]); anything short of a "verbatim" reading "in open court" would not suffice (Mack, 27 NY3d at 542).  Despite the Court's promise that "lack of notice is the key determinant in classifying a particular procedure as a mode of proceedings error"—since "counsel generally cannot object to an error of which he or she is unaware" (id. at 541)— we continued to mandate reversal, regardless of preservation, even in cases where "counsel was made aware of the existence of the note" (see Walston, 23 NY3d at 990 [emphasis added]).

Shortly after Nealon and Mack, the Court was offered another opportunity to scale back the damage of O'Rama.  In People v Parker, the record did not contain a verbatim

reading of two jury notes, but it strongly "support[ed] the conclusion that the parties and the court discussed the content of the jury notes . . . at an off-the-record proceeding" (Parker, 32 NY3d at 62 [DiFiore, Ch. J., dissenting]).  Because of the record's ambiguity, the People asserted that a reconstruction hearing—rather than automatic reversal—was the appropriate remedy in order to determine whether or not defense counsel had received meaningful notice of the notes.[1]

The Court declined that invitation, instead holding that, "where the record does not establish compliance with CPL 310.30, the sole remedy is reversal and a new trial" (Parker, 32 NY3d at 62; see also Morrison, 32 NY3d at 952 ["The trial court's failure to provide counsel with meaningful notice of a substantive jury note is a mode of proceedings error that requires reversal"]).  "[I]t is the court's responsibility," we held, to ensure "specific, record proof" of O'Rama compliance for "each note," and accordingly, in the absence of affirmative record proof, "a mode of proceedings error occur[s] requiring reversal" (Parker, 32 NY3d at 60-61).  The Parker per se reversal rule thus "operates without regard to the specific facts of whether counsel actually received meaningful notice of the content of the jury note" (Parker, 32 NY3d at 66 [DiFiore, Ch. J., dissenting]); record ambiguity, by itself, warrants reversal.  As a result of Parker's holding, the Court reversed convictions in three

---

[1] At that time, the Appellate Division departments were routinely remitting for reconstruction hearings when faced with a record ambiguity regarding O'Rama compliance (see People v Meyers, 148 AD3d 1057 [2d Dept 2017]; People v Mitchell, 129 AD3d 404 [1st Dept 2015]; People v Williams, 113 AD3d 1116 [4th Dept 2014]; People v Kahley, 105 AD3d 1322 [4th Dept 2013]; People v Russo, 283 AD2d 910 [4th Dept 2001]; People v Martinez, 186 AD2d 14 [1st Dept 1992]).

cases, "even though the record d[id] not conclusively establish that [an] error occurred, and in fact suggest[ed] that it did not" (Morrison, 32 NY3d at 974 [Garcia, J., dissenting]; see also Parker, 32 NY3d at 62).

II.

The instant appeal presents a straightforward application of Parker. While reviewing the court file, defense counsel discovered a juror inquiry that was never mentioned at trial. The inquiry was written on a form entitled "JURY NOTE." It was signed by the foreperson and labeled with a date and time. It was marked by the court clerk as a court exhibit. And it contained a substantive jury request: it asked the court to "clarify . . . the term 'evidence'" and to explain whether "the victim's test[imony]" was "considered direct evidence." It further expressed one juror's concern that the jury had deadlocked— also a substantive announcement.

Put differently, defendant asserted an O'Rama error of the most egregious variety: he had no notice of the existence of the note, much less notice of its verbatim contents. Perhaps, defendant alleged, the note was lost in transit from the jury to the judge; or perhaps it was addressed during an off-the-record proceeding; or perhaps the trial judge responded to the note without mentioning it to counsel—all plausible scenarios, and all reversible O'Rama errors. Invoking our holding in Parker, defendant asserts on appeal that the record does not affirmatively establish compliance with the trial court's meaningful notice requirement, and he is therefore entitled to the "sole remedy" of mandatory reversal (Parker, 32 NY3d at 62).

A.

Despite the gravity of defendant's allegations, the majority agrees that automatic reversal was properly sidestepped based on a then-unproven assertion that the inquiry was a draft, rather than an actual jury note. Because of "[s]ignificant ambiguity in the record," the majority contends, reconstruction was permitted "not to determine whether the court complied with the counsel notice requirements," but rather to ascertain whether those requirements were triggered at all (majority op at 2).

First, the majority points out, the note was "sequentially marked after the jury note stating that the jury had reached a verdict" (majority op at 2). To be sure, those circumstances are atypical, perhaps signaling record ambiguity. But the note was also marked with a date and time—about 4 hours *prior* to the jury's verdict announcement. In addition, while the note was irregularly numbered by the court clerk, it was not the only note marked out of order. In fact, at least two other jury notes—genuine jury notes, not drafts—were similarly marked out of sequence. And another court exhibit, Supreme Court found, was also inaccurately marked subsequent to the verdict. Even "real" jury notes, it turns out, can be misnumbered.

Next, the majority emphasizes that the note was "duplicative" of other notes that were undisputedly sent out by the jury (majority op at 2). Again, that may be true. But "real" jury notes frequently request (or convey) redundant information. In fact, in this case, at least two other jury notes were largely duplicative of one another; one note asked the court to "define the first 2 charges," and a subsequent note again asked the court to, among

other things, "re-read to the jury the description of counts 1 [and] 2." Deadlock announcements in particular—like the one in the note at issue—are often sent out more than once during prolonged jury deliberations (e.g. People v Britton, 31 NY3d 1019, 1022 [2018] [jury reported a deadlock more than once]; Rivera v Firetog, 11 NY3d 501, 504 [2008] [same]; People v Aponte, 2 NY3d 304, 306 [2004] [same]; People v O'Rama, 78 NY2d 270, 275 [1991] [same]; Pastrana v Baker, 55 NY2d 315, 317 [1982] [same]). In other words, while redundancy might mean that the note had been discarded, it might also signal persisting juror confusion.

The majority lastly notes that "no other reference" to the jury's inquiry existed on the record (majority op at 2). But the record's silence concerning a "real" jury note, while not ideal, is also not unheard of. Indeed, in People v Hanson, the trial transcript similarly did not show that the court was made aware of two jury notes (24 NY3d 294, 298 [2014]). Despite that ambiguity, the Court in Hanson held that a mode of proceedings error had occurred and reversed the defendant's convictions outright, reasoning that the record failed to "indicate compliance with adequate procedures under O'Rama" (id. at 300). Reconstruction, we held, was not an available remedy, noting that "reviewing courts 'cannot assume' that the proper procedure was utilized," and that precedent "impose[d] an affirmative obligation on a trial court to create a record of compliance under CPL 310.30 and O'Rama" (id. at 300). Here, too, the record was "bereft of any evidence" that the note was "actually received by the Supreme Court" (People v Hanson, 100 AD3d 771, 771 [2d Dept 2012]) or, as the majority puts it, there was "[s]ignificant ambiguity in the record

concerning the circumstances in which the exhibit was marked and entered into the court file" (majority op at 1-2). Yet somehow, in this case, automatic reversal is unwarranted.

B.

Of course, with the benefit of a reconstruction hearing, we now know that no error occurred. But the opposite outcome was at least equally possible: the hearing might have shown that the inquiry was, in fact, an unmentioned jury note, amounting to a particularly grievous CPL 310.30 violation. The exact same scenario was presented in Parker: reconstruction might have shown that meaningful notice was provided, or it might have confirmed that notice was lacking. The entire point of Parker's holding was that we should not—and could not—find out. Ordering reconstruction hearings, the Parker Court noted, would "ignore our case law" and "imperil one of the foundations of O'Rama: the necessity that courts fulfill their core responsibility of providing counsel with notice of the precise contents of a jury note" (Parker, 32 NY3d at 62).

Notably, had defendant asserted an O'Rama error of a lesser degree, he presumably would have been entitled to automatic reversal of his convictions. For instance, had the trial court read the note nearly verbatim but failed to mention a single word, defendant would have secured an outright reversal (see Walston, 23 NY3d at 988). Automatic reversal would similarly be required if the trial court had provided defendant verbatim notice of the note's precise contents during an off-the-record proceeding, and simply failed to so indicate on the record (see Parker, 32 NY3d at 66 n 2 [DiFiore, Ch. J., dissenting]). Yet where the record substantiates a defendant's claim that he received no notice

whatsoever of a jury note's existence, automatic reversal is no longer available. The import of that holding—the greater the error, the lesser the relief—is loaded with unfairness.

The majority's new rule also telegraphs a clear formula for evading the dictates of Parker whenever a note is not mentioned at trial. So long as any good-faith reading of the record suggests that a jury note may have been a "draft or derelict note" (majority op at 2), reconstruction is permitted to determine whether or not an O'Rama error occurred. Going forward, then, Parker's generous "sole remedy" applies only in the context of lesser O'Rama errors involving partial but incomplete notice; a complete failure to provide any notice whatsoever is now subject to reconstruction.

At bottom, the majority's strained attempt to circumvent Parker hinges on an arbitrary and unsupported distinction. While I concur in the majority's ends—limiting Parker's reach—I am not persuaded by its means.

### III.

I remain convinced that the O'Rama rule—exacerbated by Parker—is unfair and unworkable, generating contorted holdings aimed at avoiding absurd results. We can only hope that, sooner rather than later, the legislature will finally relieve us (see Morrison, 32 NY3d at 974 [Garcia, J., dissenting]).

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, in a memorandum. Chief Judge DiFiore and Judges Rivera, Stein, Fahey, Wilson and Feinman concur. Judge Garcia concurs in result in an opinion.

Decided May 9, 2019